Maxine **GREEN**, individually and as mother and natural guardian of Dale Green, Isis Green and Anastasia Hall, Plaintiff–Appellee,

v.

William A. **WELSH**, doing business as Prince Street Properties, and Ann M. Welsh, also known as Ann M. Shideler, Defendants–Appellants.

No. 341, Docket 91–5040.

United States Court of Appeals, Second Circuit.

Argued Oct. 11, 1991.

Decided Feb. 4, 1992.

**32**

Francis L. Gorman, III, Rochester, N.Y. (Dennis R. McCoy, Saperston & Day, P.C., of counsel), for defendants-appellants.

John A. Bryant, Rochester, N.Y. (Faraci, Guadagnino, Lange & Johns, of counsel), for plaintiff-appellee.

Before OAKES, Chief Judge, NEWMAN and PRATT, Circuit Judges.

OAKES, Chief Judge:

William and Ann Welsh appeal the judgment of the United States District Court for the Western District of New York, Michael A. Telesca, *Chief Judge*, vacating an order of the bankruptcy court. The bankruptcy court, Edward D. Hayes, *Bankruptcy Court Judge*, enjoined appellee Maxine Green from prosecuting her tort claims against the Welshes on account of the discharge of indebtedness received by the Welshes under Chapter 7 of the Bankruptcy Act, 11 U.S.C. § 727 (1988). The district court, in vacating the bankruptcy court order, held that Green could resume her suit against the Welshes as long as it was directed only at obtaining a judgment to be paid by the Welshes' liability insurer. Because continuation of Green's suit is permitted by 11 U.S.C. § 524 (1988) and would not jeopardize the Welshes' ability to get a fresh start, we affirm.

### FACTS

In 1988, Maxine Green brought a negligence suit, individually and on behalf of her children, in New York State Supreme Court to recover for injuries resulting from a fire at the apartment she rented from William and Ann Welsh. The claims against the Welshes are covered by their liability insurance policy of $1 million. On January 26, 1990, the Welshes filed a petition under Chapter 7 which automatically stayed Green's state court action. *See* 11 U.S.C. § 362(a)(1) (1988).

The Welshes filed a schedule of liabilities with the bankruptcy court which listed Green as an unsecured creditor with an unliquidated claim. Green could have, but did not, attempt to obtain relief from the automatic stay to pursue her tort claims up to the liability policy limit. In May 1990, the bankruptcy court granted the Welshes a discharge of all scheduled claims, pursuant to 11 U.S.C. § 727 (1988).

■ Green did not seek exclusion of her claim from the discharge. However, in August 1990, in an effort to resume her state court action, Green filed a motion in the bankruptcy court for relief from the automatic stay. The bankruptcy court denied the motion. As Green now concedes, her motion was improper because the discharge had extinguished the stay, see 11 U.S.C. § 362(c)(2)(C) (1988), and replaced it with a permanent injunction under 11 U.S.C. § 524(a) (1988).

Thereafter, in September 1990, Green moved in New York State Supreme Court to continue her negligence action. In response, the Welshes moved the bankruptcy court for enforcement of the permanent injunction. Green then cross-moved in bankruptcy court for modification of the § 524(a) injunction, if the court deemed it appropriate, to enable her to obtain a state court determination of the insurance company's liability. The bankruptcy judge denied Green's cross-motion, found that Green's tort claim had been discharged, and ordered that the § 524(a) injunction barred Green from maintaining her negligence action.

On appeal, the district court vacated the order of the bankruptcy court and held that, pursuant to § 524, the discharge under § 727 did not operate to enjoin Green from resuming her negligence suit, insofar as that action remained confined to obtaining a judgment to be paid by the Welsh's liability insurer.

## DISCUSSION

### A. The Scope of § 524

The Welshes first argue that the district court erroneously interpreted 11 U.S.C. § 524 to allow Green to continue her negligence suit in state court. The Welshes cite legislative history and some case law in support of their view that a discharge of a properly scheduled claim should bar resumption of a suit designed only to establish liability as a predicate to recovery from the debtor's insurer. However, the relevant provisions of § 524, the purpose of the Bankruptcy Code, and the vast majority of cases in the bankruptcy courts that have considered this issue show that the district court properly allowed Green to maintain her suit.

■■■■ The discharge of a debt pursuant to § 727 triggers the operation of § 524, which protects the debtor from any personal liability on the debt. As the district court noted, the relevant sections provide, in part:

A discharge in a case under this title—
(1) voids any judgment at any time obtained, *to the extent that such judgment is a determination of the personal liability of the debtor* with respect to any debt discharged ...;
(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset *any such debt as a personal liability of the debtor....*

11 U.S.C. § 524(a) (1988) (emphasis added). The relief accorded the debtor by these provisions does not extend to other parties:

Except as provided in subsection (a)(3) of this section, *discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.*

11 U.S.C. § 524(e) (1988) (emphasis added). Together, the language of these sections reveals that Congress sought to free the debtor of his personal obligations while ensuring that no one else reaps a similar benefit. *See* 3 R. Babitt et al., *Collier on Bankruptcy* ¶ 524.01 at 524–16 (15th ed. 1991). The legislative history accords with this view. For example, the Senate Report explains that § 524 was designed "to insure that once a debt is discharged, the debtor will not be pressured in any way to repay it." S.Rep. No. 989, 95th Cong., 2d Sess. 80–81 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5866.[1] The protection afforded by the discharge injunction thus furthers one of the primary purposes of the Bankruptcy Code—that the debtor have the opportunity to make a "financial 'fresh start.'" *In Re Jet Florida Systems, Inc.*, 883 F.2d 970, 972 (11th Cir.1989) (per curiam) (citing Thomas H. Jackson, *The Fresh–Start Policy in Bankruptcy Law*, 98 Harv.L.Rev. 1393, 1396–97 (1985)).

■■■■ Numerous courts, confronted with a tort claimant who seeks to proceed against a discharged debtor only for the purpose of recovering against an insurer, have relied on §§ 524(a) and 524(e) and the fresh start policy in concluding that the discharge injunction does not bar such a suit. *See, e.g. In re Jet Florida Systems, Inc.*, 883 F.2d 970, 976 (11th Cir.1989) (section 524(e) permits a plaintiff to proceed against the debtor to establish liability as a prerequisite to recover from an insurer); *In re Greenway*, 126 B.R. 253, 255 (Bankr. E.D.Tex.1991) (discharge order does not bar continuation of state court action to determine liability of debtor solely as a prerequisite to recovery from debtor's insurance carrier); *In re Peterson*, 118 B.R. 801, 804 (Bankr.D.N.M.1990) (injunction provided by § 524 does not bar FDIC from establishing the liability of the debtor so as to proceed against bank employee insurer);

---

1. The Welshes argue that the Senate Report supports their view that § 524(e) does not permit Green to resume her suit, because it applies only to entities who are independently liable to the plaintiff. The Senate Report provides that "[s]ubsection (d) [sic] provides the discharge of the debtor does not affect co-debtors or guarantors." S.Rep. No. 989 at 81, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5867. We believe, however, that this wording represents a non-exhaustive description of the most common types of third parties to which § 524(e) applies and it in no way precludes the application of the section to third parties who may be indirectly liable to a plaintiff, such as the debtor's liability insurer.

*In re Traylor*, 94 B.R. 292, 293 (Bankr. E.D.N.Y.1989) (discharge does not release debtor's insurer from liability); *In re Lembke*, 93 B.R. 701, 702–03 (Bankr. D.N.D.1988) (section 524 injunction permits suit to recover from debtor's insurer); *In re White*, 73 B.R. 983, 984–86 (Bankr. D.D.C.1987) (injunction issued pursuant to debtor's discharge does not bar a lawsuit against the debtor that will affect only the assets of the debtor's insurer); *In re Mann*, 58 B.R. 953, 959 (Bankr.W.D.Va. 1986) (section 524 does not prohibit tort claimant from maintaining a pending suit against discharged debtor to effectuate recovery under claimant's uninsured motorist coverage). Some courts have reached the same result by modifying the injunction to permit the tort suit to continue. *See, e.g. In re Walker*, 927 F.2d 1138, 1142–44 (10th Cir.1991) (section 524(e) permits a creditor to bring a direct suit against the debtor where establishment of the debtor's liability is a prerequisite to recovery from a state fund); *In re Dorner*, 125 B.R. 198, 202 (Bankr.N.D.Ohio 1991) (modification of section 524 injunction appropriate to enable defendant in tort action to establish debtor's liability for purposes of setoff and apportionment); *In re McGraw*, 18 B.R. 140, 143 (Bankr.W.D.Wis.1982) (section 524 injunction can be modified to permit continuation of suit provided that creditors are enjoined from collecting any judgment from debtor). Yet other courts have applied similar reasoning in deciding to grant a tort claimant relief from the automatic stay. *See, e.g. In re Fernstrom Storage and Van Co.*, 938 F.2d 731 (7th Cir.1991); *Elliott v. Hardison*, 25 B.R. 305 (E.D.Va. 1982); *In re Honosky*, 6 B.R. 667 (Bankr. S.D.W.Va.1980).

One of these cases, *In re Jet*, merits further discussion because, even though the debtor sought protection under Chapter 11, the court's analysis is both persuasive and highly applicable to the resolution of this appeal.[2] A plaintiff who had sued the debtor for defamation failed to file a proof of claim with respect to his action prior to the bar date for filing proofs of claims. 883 F.2d at 972. The bankruptcy court subsequently issued a permanent injunction under § 524 and barred the plaintiff from continuing his suit. *Id.* On appeal, the district court found that the statutory language and purpose of the § 524(a) injunction, aimed at protecting the debtor, did not preclude a suit tailored solely to determining the debtor's liability as a precondition for recovery against the debtor's liability insurer. *Id.* at 973. The court then held that § 524(e)'s broadly worded limitation on the effect of discharge permitted the plaintiff to proceed against the debtor with such a suit. *Id.* at 976. In reaching this conclusion, the court emphasized that neither the " 'fresh-start' policy" nor § 524 was designed to immunize "third parties such as insurers who may be liable on behalf of the debtor," and the insurer should not gain a benefit that had not figured in the calculation of the premium for the policy. *Id.* at 975 (footnote omitted). Finally, the court found it highly unlikely that the debtor would incur any expenses in defending the suit because the discharge left it free to default, thus compelling the insurer to pay the costs of litigation. *Id.* at 976. *In re Jet* and a host of other cases stand squarely in opposition to the Welshes' view of the scope of a section 524 injunction.

Appellants rely on *In re White Motor Credit*, 761 F.2d 270 (6th Cir.1985), where the court barred continuation of personal injury claims that would have been paid by the debtor's insurers. We believe, however, that our preceding discussion shows that the outcome mandated by *White Motor Credit* is supported by neither the text nor the intent of § 524. Moreover, as the court in *In re Jet* implied in rejecting the Sixth Circuit's view, the persuasiveness of *White Motor Credit* is undermined by the court's failure to support its decision with any analysis. *See In re Jet*, 883 F.2d at 973–74. The *White Motor Credit* court, without any countervailing purpose, de-

**2.** Note that the *In re Jet* court affirmed the judgment of the district court for the reasons set forth in the district court's opinion. According-ly, the following references are to the district court's opinion as incorporated by the appellate court.

prived the personal injury plaintiffs of a significant right by denying them the opportunity to litigate the issue of liability. *See In re Mann,* 58 B.R. at 959. For these reasons, we decline to follow its holding.

The Welshes also contend that the case of *Freed v. Braniff Airways, Inc.,* 119 F.R.D. 10 (S.D.N.Y.1987), compels reversal of the district court. In *Freed,* the plaintiff brought tort claims in district court against the debtor. *Id.* In an earlier Chapter 11 proceeding, however, a bankruptcy court in Texas had specifically barred all of the plaintiff's claims against the debtor. *In re Braniff Airways, Inc.,* 1986 WL 20577 (Bankr.N.D.Tex.1986). The district court held that the bankruptcy court's holding collaterally estopped the plaintiff's claims. *Freed,* 119 F.R.D. at 10–11. The district court never reached the merits of whether 11 U.S.C. § 524 barred the plaintiff's claims against the debtor's insurer. Further, the case differs from the facts at issue here because apparently the *Freed* plaintiff never appealed the determination of the Texas bankruptcy court, deciding instead to assert her claims in district court despite the earlier bankruptcy proceeding. In this case, Green appealed the bankruptcy court's order, denying her cross-motion for modification of the § 524 injunction, to the district court. Thus, *Freed* does not provide compelling authority for barring Green from continuing her suit.

Thus, notwithstanding *White Motor Credit* and *Freed,* we believe that § 524 permits a plaintiff to proceed against a discharged debtor solely to recover from the debtor's insurer. Applied here, this principle permits Green to continue her suit against the Welshes to establish liability as a precondition to recovery from the Welshes liability insurer.

Green did miss several opportunities to obtain the relief she ultimately sought through the motion for modification of the § 524 injunction that forms the basis of this appeal. Prior to discharge, Green could have sought to continue her suit by moving for relief from the automatic stay. Following discharge, Green could have appealed the discharge order, instead of erroneously moving for relief from the automatic stay. But we do not believe the delay of approximately eight months between the time the bankruptcy court issued the discharge order and her motion at issue here should forever bar her from continuing her suit, because this delay has resulted in no prejudice to the insurer or the debtor. *See In re Walker,* 927 F.2d 1138, 1143 (10th Cir.1991) (plaintiff may sue debtor solely to establish liability despite one-year delay in seeking relief from discharge injunction where, *inter alia,* debtor was not prejudiced by the delay); *see also In re Mann,* 58 B.R. at 955) (bankruptcy court permitted plaintiff to proceed against debtor to recover from debtor's insurer even though plaintiff moved for such relief ten months after debtor was granted a discharge). Therefore, we reject the Welshes' first claim.

## B. Appellants' Remaining Claims

■ The Welshes' remaining claims do not require extended discussion. They argue that the doctrines of *res judicata* and collateral estoppel require us to reverse the district court and bar resumption of Green's negligence action. They base this argument on Green's failure to appeal two orders of the bankruptcy court: the discharge order of May 1990 and the order of September 1990 denying Green relief from the automatic stay. The discharge order triggered the operation of section 524, which relieved the Welshes of personal liability on Green's tort claim. However, because the scope of section 524 does not extend to Green's suit against the Welshes to recover from their insurer, the discharge order never determined Green's ability to continue that suit. And the order denying Green relief from the automatic stay similarly involved no determination of Green's right to continue her suit, because at the time Green sought relief there existed no automatic stay from which relief could be granted. Thus, these claims must fail.

Finally, the Welshes argue that the bankruptcy court's denial of Green's cross-motion for modification of the discharge injunction was not an abuse of discretion, and thus the district court erred in vacating

the bankruptcy court's order. However, as our discussion of the scope of the section 524 injunction indicates, we believe that the bankruptcy court misinterpreted the effect of discharge and the district court properly vacated the bankruptcy court's order. Accordingly, this claim is meritless.

## IV

In sum, we find that the discharge injunction under §§ 524(a) and 524(e) permits Green to continue her suit against the Welshes, without requiring her to obtain a modification of the injunction, but only to prove liability as a prerequisite to recovery from the Welsh's liability insurer. Green remains barred from proceeding against the Welshes personally to collect any judgment awarded as a result of her suit.

Affirmed.