[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 3635
In its present posture, this is an action under the Uniform Fraudulent Transfer Act. C.G.S. §§ 52-552a to 52-552l.
The sole defendant now is Constance B. Castagna. Her husband, John P. Castagna, Sr., was the original defendant in this case. As of July 1, 1992, John P. Castagna, Sr. was indebted to the plaintiff. John P. Castagna, Sr. and Constance B. Castagna were joint owners of a property located in Clinton, Connecticut. On July 14, 1992, John P. Castagna, Sr. transferred to Constance B. Castagna "all of his interest in said property without consideration and with the intent of avoiding the plaintiff's debt and hindering its collection." Amended Complaint, Count 2, ¶ 7.
This action began by a complaint dated August 12, 1992. At that time John P. Castagna, Sr., was the sole defendant.
On August 6, 1993, the defendant John P. Castagna, Sr. filed a voluntary petition in bankruptcy. On February 10, 1994 he received a discharge order. In May or June of 1993, the plaintiff amended its complaint, adding Constance B. Castagna as a defendant, and alleging this cause of action under the Uniform Fraudulent Transfer Act. [115 — 117] At that time, plaintiff filed a lis pendens in the Clinton Land Records relating to this action. Plaintiff did not effect a prejudgment remedy against the Clinton property.
The action against the original defendant, John P. Castagna, Sr. has been withdrawn because of his bankruptcy discharge. [119] The defendant Constance B. Castagna has moved for summary judgment claiming "that the plaintiff is seeking to set aside a conveyance of real property as a fraudulent conveyance, when the plaintiff had no valid lien against the property before the underlying debt was discharged in bankruptcy." Defendant Constance B. Castagna's Motion for Summary Judgment. [126][1]
Correct analysis of the situation here begins with Section 524 of the Bankruptcy Code. The pertinent part provides as follows as follows:
(a) A discharge in a case under this title — CT Page 3636
 (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived;
 (e) Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.
The language of that section is clear, the bankruptcy discharge does not effect the liability of any other entity or person for the debts discharged in bankruptcy.
 "Together, the language of these sections reveals that Congress sought to free the debtor of his personal obligations while ensuring that no else reaps a similar benefit."
Green v. Welsh, 956 F.2d 30, 33 (2 Cir. 1992).[2]
 Kathy B. Enterprises, Inc. v. United States, 779 F.2d 1413
(9th Cir. 1986), "involve[d] the Internal Revenue Service's attempts to collect taxes from the recipient of a delinquent taxpayer's fraudulent conveyance." 779 F.2d 1414. The delinquent taxpayer had fraudulently conveyed the assets of his accounting business to Kathy B. Enterprises, Inc. [Kathy B.]. Kathy B. was in the medical supply business and "had never engaged in the accounting business." Id. Immediately upon receipt of the assets of the accounting business, Kathy B. sold those assets to an accounting firm. Under the terms of the sale, Kathy B. was to be paid in installments by the accounting firm.
Sometime after the fraudulent transfer, the IRS assessed back taxes against the taxpayer. He filed a petition in bankruptcy and later received a discharge in bankruptcy. "[T]he IRS tried to collect the tax debt by seizing the proceeds Kathy B. was receiving for the sale of taxpayer's business. To do this, the IRS levied against Kathy B.'s Arizona bank account and against the accounting firm that purchased the business." "Kathy B. filed suit in the federal district court to enjoin the IRS's collection efforts." Id. CT Page 3637
The district court held for the IRS. Kathy B. appealed claiming "that the bankruptcy court's discharge of the taxpayer's liability for the taxes also discharges the liability that fraudulent transferees of the taxpayer had for that debt under state law." Id.
The court held the IRS could collect in this manner. It held that the language of § 524(e) was clear. The Court of Appeals for the Ninth Circuit upheld the district court stating: "We see no reason to infer an exception to clear statutory language for the benefit of recipients of fraudulent conveyances." Kathy B. Enterprises, Inc. v. United States,779 F.2d 1413, 1415 (9th Cir. 1986).
A similar result was reached in Dixon v. Bennett,531 A.2d 1318 (Md.App. 1987). In that case, plaintiff, an unsecured creditor, brought an action pursuant to the Maryland Uniform Fraudulent Conveyance Act. The defendants were the alleged fraudulent transferees. The debtor, one Rice, was indebted to the plaintiff. Rice received a discharge in bankruptcy. Shortly thereafter, plaintiff brought an action against the defendants, Rice's alleged fraudulent transferees. The trial court found that [plaintiff] was "`precluded from individually suing to set aside a fraudulent conveyance subsequent to the debtors discharge in bankruptcy.'" Id., 531 A.2d 1326.
The Maryland Court of Special Appeals, therefore, found "it necessary to discuss briefly the effect of the debtor's discharge on [plaintiff's] right to bring a cause of action against the fraudulent transferee . . . ." Id.
 The discharge provision of the Bankruptcy Code, 11 U.S.C. § 524, consistent with fundamental bankruptcy policy, provides the debtor with a fresh start free from the burdens of preexisting liabilities. Under § 524, the discharge only (i) extinguishes personal liability of the debtor; and (ii) prevents creditors whose claims arose pre-bankruptcy from any actions to impose personal liability on the debtor. 11 U.S.C. § 524
(1978). Section 524(e) expressly provides that the `discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.' § 524(e).
Under § 16 of the Bankruptcy Act of 1898, Ch. 541, 30 CT Page 3638 Stat. 544 (1898), the limitation of discharge provision restricted actions to those against co-debtors, guarantors, or other sureties. The language of § 524(e) of the 1978 Bankruptcy Code reveals a congressional intent to broaden the rights of creditors, by preserving their actions against third parties and their property, and to restrict the effect of a discharge solely to a release of the personal liability of the debtor.
 In Kathy B. Enterprises, Inc. v. United States, 779 F.2d 1413 (9th Cir. 1986), a debtor fraudulently transferred assets to a third party. The debtor was eventually discharged. Subsequently, the Internal Revenue Service attempted to collect delinquent taxes owed by the debtor by seizing the proceeds the third party was receiving from the sale of the debtor's assets. The IRS claimed that it could collect the taxes in this way because under Illinois law the transfers had been fraudulent. The third party argued that the debtor's discharge barred the IRS's cause of action. The Court, relying on the change in the statutory language, held that under § 524(e) the IRS could bring a cause of action against a fraudulent transferee despite the debtor/taxpayer's discharge. Kathy B., 779 F.2d at 1415. We agree with the 9th Circuit. In the case sub justice, appellant did not seek to impose personal liability on the debtor but brought her cause of action against the fraudulent transferee. We believe appellant's claim is precisely the type contemplated by the expanded scope of § 524(e). [Italics in original.] Dixon v. Bennett, 531 A.2d 1318, 1326-1327 (Md.App. 1987).
The discharge in bankruptcy under Section 524 does not discharge the debt. It, however, freed the debtor, John A. Castagna, Sr. from the obligation. It does not excuse any other entity or person from liability. Plaintiff in this case is not barred from pursuing this action against the defendant Constance B. Castagna, the alleged fraudulent transferee.
In the present Motion For Summary Judgment, the defendant claims "that the plaintiff is seeking to set aside a conveyance of real property as a fraudulent conveyance, when the plaintiff had no valid lien against the property before the underlying debt CT Page 3639 was discharged in bankruptcy." Defendant Constance B. Castagna's Motion for Summary Judgment. [126]
Defendants' claim is based on Bank of New Haven v. Rinella,9 CSCR 369 (1994). That case had a fact situation similar to the case at bar.
In Rinella, James and Emira Rinella executed a demand note to the Bank of New Haven. At that time Emira Rinella owned land in Orange, Connecticut. In 1986, Emira Rinella conveyed that land to a Mary Winters who immediately conveyed it to Allenir Investment Corporation (Allenir). Both transfers were claimed to be fraudulent. In 1990, the plaintiff bank demanded payment. In 1992, the bank caused a lis pendens to be filed against the Orange property. In 1993, Emira Rinella filed a petition in bankruptcy. Later that year she received a discharge in bankruptcy. Allenir moved for summary judgment asserting —
 that the issue is whether the plaintiff is a secured party, because only a secured party may pursue a third party to collect on the pre-petition liabilities of a discharged debtor. Allenir further asserts that plaintiffs' filing of the lis pendens serves only as notice of plaintiff's fraudulent conveyance suit and is not the equivalent of an attachment on the debtor's interest in the property allegedly fraudulently conveyed. Accordingly, plaintiff's fraudulent conveyance action against Allenir cannot proceed because the debtor has been discharged in bankruptcy and plaintiff failed to file an attachment or obtain a lien prior to the debtor's petition in bankruptcy. 9 CSCR 270 (February 24, 1994).
The court, relying on FDIC v. Cortina, 20 CLT 4 (1993),[3]
granted Allenir's motion for summary judgment. The court stated:
 While FDIC v. Cortina may in fact be distinguished based on the procedural posture of the case, the reasoning is persuasive with regards to the present case. Plaintiff, in the present case, failed to obtain a valid pre-bankruptcy lien on the property that was transferred by the debtor. Plaintiff merely filed a notice of lis pendens, which does not create a lien. Thus, plaintiff is not a secured creditor with an unavoided lien. Pursuant to the holding of FDIC v.CT Page 3640 Cortina, plaintiff, as an unsecured creditor, may not proceed with an in rem, fraudulent conveyance action against the third party transferee, Allenir, on the ground that debt upon which plaintiff is seeking to collect has been discharged in bankruptcy. Accordingly, Allenir's motions for summary judgment and to discharge the lis pendens are granted."
Bank of New Haven v. Rinella, 9 CSCR 269, 271 (February 24, 1994).
The court does not believe it should follow Bank of NewHaven v. Rinella. Since the Rinella decision states it was predicated on FDIC v. Cortina, 20 CLT 4, the court examines that decision.
FDIC v. Cortina, began in the Superior Court as an action to foreclose property in Oxford. The defendants, Angelo Pullo, Alvaro Cortina, and Lewellyne Griswold were indebted to the Connecticut Bank and Trust Company ("CBT"). That debt was secured by a mortgage on property located in Oxford, Connecticut. On May 4, 1990, FDIC v. Cortina (but not under that name) was brought in the Superior Court to foreclose the Oxford property because the note and mortgage were in default. Angelo Pullo had owned properties in Monroe and Shelton. In February 1990, he had conveyed these properties to his wife, Marilyn Pullo.
In October or November 1990, the bank determined that the Oxford property was not sufficient to satisfy the debt. In order to secure an anticipated deficiency judgment in the foreclosure action, the bank obtained ex parte prejudgment attachments of Angelo Pullo's reversionary interests in the Shelton and Monroe properties he had transferred to his wife, Marilyn Pullo. He allegedly had conveyed these properties to his wife without appropriate consideration.
In late 1990, the bank brought two separate actions in the Superior Court against Angelo and his wife Marilyn Pullo alleging fraudulent conveyances of the Monroe and Shelton. The bank did not obtain prejudgment attachments in either of these actions. The bank did place a lis pendens on the appropriate land records at the time each of these actions were begun.
In 1991, while the three actions (the foreclosure and two fraudulent conveyance actions) were pending in the Superior Court, CBT was declared insolvent and the Federal Deposit CT Page 3641 Insurance Corporation (FDIC) succeeded to CBT's interests in these cases. The FDIC removed the foreclosure action to the United States District Court. In the federal court, FDIC was named as plaintiff instead of CBT. Thus, the foreclosure case became FDIC v. Cortina.
The fraudulent conveyance cases continued in the Superior Court.
At some point, it is not clear when, Angelo Pullo had received a discharge in bankruptcy. The petition for his bankruptcy must have been filed after CBT had "obtained ex parte prejudgment attachments of Angelo Pullo's reversionary interests in the Shelton property and the Monroe property to secure a potential deficiency judgment" in the foreclosure action.
In the now federal foreclosure action, Angelo and Marilyn Pullo moved to quash the ex parte prejudgment attachment of Angelo Pullo's reversionary interest in the Shelton and Monroe properties. It is important to note it was "these prejudgment attachments that [were] the subject of the pending motion" inFDIC v. Cortina. Neither the bank nor the FDIC had obtained prejudgment attachments in either of the Superior Court fraudulent conveyance actions. The court held that "under Connecticut law a lis pendens is not a lien." This court agrees with that proposition.
The court stated: "Whether or not the FDIC possesses an attachment in this [foreclosure] action is not the issue. The crucial question is whether there is probable cause to sustain the fraudulent transfer actions. Unless valid liens have been filed in the fraudulent transfer actions, there is no probable cause to sustain those actions subsequent to the bankruptcy discharge."[4] FDIC v. Cortina, p. 8. The court then held: "Since a lis pendens is not a lien upon which the FDIC can proceed, this court finds that there is not probable cause to sustain the plaintiff's fraudulent transfer actions. Mr. Pullo, therefore, has no attachable interest in the Shelton and Monroe properties." FDIC v. Cortina, p. 9.
The court therefore quashed the prejudgment attachments of Mr. Pullo's reversionary interest in the Shelton and Monroe properties.
It may be that the failure to have pre-bankruptcy judicial CT Page 3642 liens in the two fraudulent transfer actions meant that "Angelo Pullo had no attachable interest in the Shelton and Monroe properties. But that does not mean that the fraudulent transfer actions were no longer viable against Marilyn Pullo, the fraudulent transferee. The court in Cortina did not so hold. It couldn't. That was not the issue in that case. The court there was not called upon to decide whether the two fraudulent transfer actions should be dismissed because pre-bankruptcy liens had not been obtained in those cases.
The court did not rule that the FDIC, or its predecessor, CBT, could not prosecute the fraudulent conveyance actions against Marilyn Pullo and/or her interest in the Monroe and Shelton properties. Therefore, Cortina is not precedent for Mrs. Castagna's motion for summary judgment.
Confusion is fomented by equating or analogizing the absence of a valid pre-bankruptcy judicial lien with the absence of probable cause in a fraudulent conveyance action.
Several lines in FDIC v. Cortina promote this confusion. In arriving at its conclusions, the court in FDIC v. Cortina
relied on TIE Communications, Inc. v. Kopp, 218 Conn. 281 (1991). It is important to read that case carefully to grasp what it held and why. TIE Communications, Inc. v. Kopp did not involve a bankruptcy discharge.
In TIE Communications, Inc. v. Kopp, 218 Conn. 281 (1991), the plaintiff claimed that the defendant Mr. Kopp had fraudulently conveyed his interest in the family home to the defendant Mrs. Kopp. Plaintiff obtained an ex parte prejudgment attachment of Mr. Kopp's "`alleged interest' in the property transferred to his wife." 218 Conn. 295. The trial court held a hearing on the prejudgment remedy attachment. It found in that proceeding that Mr. Kopp had transferred his interest in the family home to Mrs. Kopp for fair value. The court also found there was no probable cause to believe that Mrs. Kopp had intended to defraud Mr. Kopp's creditors.
 TIE also challenges the trial court's discharge of its attachment against the Kopp family home. TIE does not dispute the court's finding of fact in this proceeding that Kopp's sale of his half-interest in the family home to his wife for $55,000 in cash was for good and adequate consideration. It does not challenge, CT Page 3643 moreover, the finding that there was no probable cause to believe that Elizabeth Kopp participated in the sale with the intent to defraud Kopp's creditors, and thus no probable cause to sustain the attachment against her property. TIE claims instead that, because its claim of a fraudulent conveyance could not be resolved on the merits at a hearing on a prejudgment remedy; see Augeri v. C.F. Wooding Co., 173 Conn. 426, 428, 378 A.2d 538
(1977); it might still be able to prove at trial that the transfer was a `fraudulent conveyance' and thus that Robert Kopp retained an equitable interest in the property. Because probable cause was found as to his liability to TIE based upon the guaranty agreements, TIE claims to be entitled to attach his undetermined and possibly nonexistent "interest" in the family home owned by his wife, even though no probable cause was found that his sale of that interest to his wife was a fraudulent conveyance.
 TIE's argument is specious. Once the Kopps challenged the attachment, and the trial court had found, even at this preliminary proceeding, that the transfer to Elizabeth Kopp was for adequate consideration, and that there was no showing of fraudulent intent on her part; see Tyers v. Coma, 214 Conn. 8, 11, 570 A.2d 186 (1990); Kopp had no attachable interest in the family home held in her name, and `saying doesn't make it so.'
. . .
 We have previously held that 52-278e (a) is saved from constitutional infirmity by the requirement that a requested probable cause hearing shall swiftly follow an ex parte attachment. Ford Motor Credit Co. v. B. W. Beardsley, Inc., 208 Conn. 13, 17, 542 A.2d 1159
(1988); but see Pinsky v. Duncan, 907 F.2d 17 (2d Cir.), cert. granted sub nom. Connecticut v. Doehr, U.S. 111 S.Ct. 42, 112 L.Ed.2d 18 (1990). When an ex parte prejudgment remedy allows a plaintiff to cloud the marketable title of the real property of a third party, however, it has reached the outer limit of the constitutional stratosphere. Once a trial court has found there is no probable cause that the plaintiff will be able to prove the only legal claim linking the CT Page 3644 third party's property to the defendant, the plaintiff's statutory right to attach an interest in the third party's property must cease. To conclude otherwise would authorize a plaintiff to encumber anyone's property upon the wildest and most unfounded assertions of fraudulent conveyance. Such an attachment would violate the property owner's rights of due process under the fifth and fourteenth amendments to the United States constitution, and is not countenanced by any reasonable construction of our statute."
[Footnote omitted.] TIE Communications, Inc. v. Kopp,218 Conn. 281, 295-6 (1991).
TIE Communications, Inc. v. Kopp, 218 Conn. 281 (1991), does not hold or state that the failure or absence of a prejudgment remedy negates or prevents the plaintiff from pursuing the underlying fraudulent conveyance action. Thus, when the trial court in TIE Communications held there was no probable cause to sustain the attachment of Mrs. Kopp's property, it did not prevent TIE Communications from pursuing its fraudulent conveyance action against Mrs. Kopp. If on the full trial, TIECommunications were to establish that Mr. Kopp's conveyance to Mrs. Kopp was a fraudulent conveyance, TIE Communications would be entitled to the relief afforded by the fraudulent conveyance statute, C.G.S. § 52-552. The continued vitality of the fraudulent conveyance action was not dependent on a finding of probable cause; the fraudulent conveyance action was not defeated when the court found there was no probable cause to continue the attachment.
In Tie Communications, which did not involve bankruptcy, the court found there was no probable cause to sustain a prejudgment attachment. It held the prejudgment attachment could not remain. The court did not say the converse; the absence of a judicial lien means there is no probable cause. The court did not say the fraudulent conveyance action could not continue.
In FDIC v. Cortina, the court's focus was on the reversionary interest(s) of Angelo Pullo. The FDIC had a pre-bankruptcy attachment of those interests. The court held those reversionary interests were non-existent after his discharge if pre-bankruptcy judicial liens of Angelo Pullo's interests had not been obtained in the fraudulent conveyance actions. Since such liens had not been obtained, according to the court, it followed CT Page 3645 there was no reversionary interest which had been Angelo Pullo's the Monroe and Shelton properties. Since no pre-bankruptcy judicial lien of Angelo Pullo's interest had been obtained in the fraudulent conveyance actions, there was no probable cause to sustain the prejudgment lien on his reversionary interest placed in the foreclosure action.
FDIC v. Cortina does not hold that the plaintiff in the state court fraudulent conveyance actions could not pursue those cases against the fraudulent transferee. And, it did not say there was not probable cause in those cases as against the fraudulent transferee, Marilyn Pullo.
It appears to the court that four statements from Cortina
influenced the decision in Bank of New Haven v. Rinella,9 CSCR 269 (1994). The court therefore analyzes them.
1.
 In this foreclosure action, the plaintiff has attached Angelo Pullo's reversionary interest in the Monroe and Shelton properties in order to secure a deficiency judgment. That reversionary interest, however, is dependent upon the successful prosecution of the two separate fraudulent transfer actions that are pending in the superior court. See, Tie, 218 Conn. at 295. This court must, therefore, look to the validity of those fraudulent transfer actions in order to determine whether Mr. Pullo has any attachable interest in the Shelton and Monroe properties. If there is not probable cause to prosecute those actions, then the plaintiff in this case, like the plaintiff in TIE, has no interest to attach. TIE, 218 Conn. at 295.
FDIC v. Cortina,
That statement is misleading in the context of this case and warrants elaboration here. Angelo Pullo's "reversionary interest . . . is dependent upon the successful prosecution of the two separate fraudulent transfer actions" against Angelo Pullo's interest in the transferred properties. Since valid pre-bankruptcy judicial liens had not been obtained in the fraudulent conveyance actions, according to the Cortina court, he had no interest in those properties that survived his discharge. He had CT Page 3646 no interest which could revert. Angelo Pullo's not having any interest after his bankruptcy discharge which could be attached means no more than he had nothing to attach. In TieCommunications, the finding of no probable cause meant there was nothing to attach. It is a perversion of Tie Communications to say that the absence of a valid attachment means there is no probable cause to continue the action against the fraudulent transferee.
2.
 The crucial question is whether there is probable cause to sustain the fraudulent transfer actions. Unless valid liens have been filed in the fraudulent transfer actions, there is no probable cause to sustain those actions subsequent to the bankruptcy discharge."
FDIC v. Cortina, Again, that statement is correct only as it relates to the fraudulent conveyance actions against Angelo Pullo's interest in the transferred properties. It is not a correct statement regarding the fraudulent conveyance actions against the fraudulent transferee, Marilyn Pullo.
3.
 Since a lis pendens is not a lien upon which the FDIC can proceed, this court finds that there is not probable cause to sustain the plaintiff's fraudulent transfer actions. Mr. Pullo, therefore, has no attachable interest in the Shelton and Monroe properties.
FDIC v. Cortina, And again, this statement is correct only insofar as it relates to Angelo Pullo's interest. It is not correct as to the case against the fraudulent transferee, Marilyn Pullo.
4.
 In such a case, a creditor is limited to proceeding with its collection efforts by pursuing only in rem actions against property subject to a valid pre-bankruptcy judicial lien. In re Kalli, 34 B.R. 191
(Bankr. D. Vt. 1983).
FDIC v. Cortina, In re Kalli did not involve a fraudulent conveyance. CT Page 3647 It involved a creditor, the Internal Revenue Service, that had a valid pre-bankruptcy lien which survived the Kallis' (husband and wife) bankruptcy discharge. That case held that the lien was enforceable against the discharged debtors' homestead to the extent the lien exceeded the homestead exemption. Kalli is not authority that a creditor of a discharged debtor cannot proceed against a fraudulent transferee of the discharged debtor.
In Bank of New Haven v. Rinella, Cortina was extended to a situation similar to this case. This court believes that Rinella
attributes a holding to FDIC v. Cortina which is unwarranted. This court disagrees with Rinella and does not follow its holding.
There is at least an undercurrent in Bank of New Haven v.Rinella and in defendant's motion that this is solely an actionin rem. That is not so. Under the former statute, C.G.S. § 52-552, it was not so.
 A party complaining of a fraudulent conveyance has, among other remedies, one at law for damages against both the wrongdoers, and one in equity to have the fraudulent conveyance set aside. Finance Corporation of New England, Inc. v. Scard, 100 Conn. 712, 718, 124 A. 715 (1924); see also 37 Am.Jur., Fraudulent Conveyances 167."
Gaudio v. Gaudio, 23 Conn. App. 287, 302 (1992).
The law in effect at the time the conveyance or transfer was made is controlling. Tyler v. Schnabel, 34 Conn. 216, 220-221
(1994); Farrell v. Farrell 36 Conn. App. 305, 312, fn. 8 (1994). Since the conveyances in Cortina and Rinella
occurred before October 1, 1991, C.G.S. § 52-552 controlled, or should have controlled, those cases. In the present case, the transfer occurred in July 1992. Therefore, the Uniform Fraudulent Transfer Act, C.G.S. §§ 52-555a to 52-552l, controls here.
Section 52-552h of that Act provides:
 Remedies of creditors. (a) In an action for relief against a transfer or obligation under sections 52-552a
to 52-552l, inclusive, a creditor, subject to the limitations in section 52-552i, may obtain: (1) CT Page 3648 Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim; (2) an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by chapter 903a; (3) subject to applicable principles of equity and in accordance with applicable rules of civil procedure (A) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property, (B) appointment of a receiver to take charge of the asset transferred or of other property of the transferee, or (C) any other relief the circumstances may require.
 (b) If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.
C.G.S. § 52-552h.
Section 52-552h, which is a part of the Uniform Fraudulent Transfer Act, permits more than an action in rem against the property fraudulently transferred; it allows an in personam
action against the fraudulent transferee.
The defendant's Motion For Summary Judgment [126] is denied.