[No. 20367-1-III.   Division Three.   May 22, 2003.]

JOSE A. ARREYGUE, ET AL., *Appellants*, v. SHANNA L. LUTZ, ET AL., *Respondents*.

*George Fearing* and *Timothy P. Coogan*, for appellants.

*Mark D. Watson* and *Alfred G. Schweppe* (of *Meyer, Fluegge & Tenney, P.S.*), for respondents.

Kurtz, J. — The superior court dismissed Jose and Carla Arreygue's personal injury lawsuit against Shanna Lutz because the Arreygues' claim against Ms. Lutz had been discharged in a chapter 7 bankruptcy. On appeal, the issue is whether the Arreygues could sue Ms. Lutz for the sole purpose of establishing her liability in order to recover from her insurance company. We hold that the Arreygues could sue Ms. Lutz for that purpose, and we further hold that the superior court improperly dismissed their personal injury claim against her.

## FACTS

On June 12, 1997, Carla Arreygue was involved in an automobile accident. The driver of the other car was Shanna Lutz. Thereafter, on December 2, 1997, Shanna Lutz filed a petition for relief under chapter 7 of 11 U.S.C. Ms. Lutz listed Carla and Jose Arreygue among her creditors, referencing their 1997 claim for personal injuries

arising out of an automobile accident. A chapter 7 discharge was granted to Ms. Lutz on March 11, 1998.

Nearly three years after the accident—on June 9, 2000—Jose and Carla Arreygue filed a complaint in the Kittitas County Superior Court alleging personal injury and property damage caused by Ms. Lutz's negligence. In response, on March 19, 2001, Ms. Lutz filed a motion for summary judgment, along with a supporting affidavit executed by John D. Winfrey III. In her motion, Ms. Lutz asked that the Arreygues' lawsuit be dismissed because the claim upon which the lawsuit was based had been dismissed in bankruptcy. In his affidavit, Mr. Winfrey identified himself as Ms. Lutz's attorney and attested that a true and correct copy of Ms. Lutz's bankruptcy discharge was attached to the affidavit.

The Arreygues responded to Ms. Lutz's motion by filing an affidavit executed by their attorney, Timothy Coogan. In that affidavit, the attorney acknowledged that his clients could not recover personally against Ms. Lutz due to the bankruptcy discharge. But, the attorney represented that at the time of the accident Ms. Lutz had automobile insurance. He further stated "Plaintiffs fully agree that they may not recover any funds from Defendants in excess of their insurance policy limits." Clerk's Papers at 12. Although Ms. Lutz does respond to Mr. Coogan's affidavit, she neither affirms nor denies his statement that she was insured at the time of the accident. Rather, she filed a motion to strike the affidavit, arguing that the affidavit contains both unsupported assertions of fact and legal conclusions.

The trial court granted Ms. Lutz's motion for summary judgment and dismissed the Arreygues' claim. They appeal.

*Standard of Review.* In reviewing a summary judgment, we engage in the same inquiry as the trial court. *Snohomish County v. Anderson*, 124 Wn.2d 834, 843, 881 P.2d 240 (1994). The facts and all reasonable inferences from the facts are construed in favor of the nonmoving parties, Jose and Carla Arreygue. *Id.* We do not weigh the

evidence or determine the truth of the matter; the only question is whether there is a genuine issue for trial. A motion for summary judgment should be granted only if the court concludes that reasonable persons would reach but one conclusion based upon the facts and reasonable inferences therefrom. And, where material facts are particularly within the knowledge of the moving party, courts have been reluctant to grant summary judgment. *Mich. Nat'l Bank v. Olson*, 44 Wn. App. 898, 905, 723 P.2d 438 (1986) (quoting *Felsman v. Kessler*, 2 Wn. App. 493, 496-97, 468 P.2d 691 (1970)).

■ We review the superior court's statutory construction of 11 U.S.C. § 524 de novo. *Stuckey v. Dep't of Labor & Indus.*, 129 Wn.2d 289, 295, 916 P.2d 399 (1996); *In re Stainton*, 139 B.R. 232, 234 (B.A.P. 9th Cir. 1992). Accordingly, whether a state court suit is barred by the permanent injunction of 11 U.S.C. § 524 is a question of law which we review de novo. *In re Daniels-Head & Assocs.*, 819 F.2d 914, 917 (9th Cir. 1987).

■ *Issue.* May a plaintiff proceed against a discharged debtor solely to recover from the debtor's insurer?

*Analysis.* 11 U.S.C. § 524 provides in relevant part:

(a) A discharge in a case under this title—

. . . .

(2) operates as an injunction against the commencement or continuation of an action . . . to collect, recover or offset any [discharged] debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and

. . . .

(e) Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.

"Together, the language of these sections reveals that Congress sought to free the debtor of his personal obligations while ensuring that no one else reaps a similar benefit." *Green v. Welsh*, 956 F.2d 30, 33 (2d Cir. 1992). Subsection (a)

prohibits creditors from attempting to collect a debt that has been discharged in bankruptcy. Subsection (e) states that this injunction applies only to the debtor's personal liability and does not prohibit collection efforts against other entities. *See, e.g., In re Edgeworth*, 993 F.2d 51, 54 n.6 (5th Cir. 1993). Because the § 524(a) permanent injunction affects only debts for which the debtors are personally liable, "the statutory language, on its face, does not preclude the determination of the debtor's liability upon which the damages would be owed by another party, such as the debtor's liability insurer." *In re Jet Fla. Sys.*, 883 F.2d 970, 973 (11th Cir. 1989).

On similar facts, *In re Beeney*, 142 B.R. 360 (B.A.P. 9th Cir. 1992) provides relevant Ninth Circuit authority. In that case, debtor Gary Beeney and appellant James Patronite were involved in an automobile accident. Mr. Beeney subsequently filed a petition under chapter 7 of the bankruptcy code and scheduled Mr. Patronite as one of his creditors. Like the Arreygues, Mr. Patronite waited to file his personal injury lawsuit until after Mr. Beeney received his chapter 7 discharge. At that time, Mr. Patronite sought to reopen Mr. Beeney's bankruptcy case so that the court could consider his request for relief from the permanent injunction of 11 U.S.C. § 524. The bankruptcy court denied his motion to reopen the bankruptcy case.

The case was appealed to the bankruptcy appellate panel for the Ninth Circuit. Before deciding whether the bankruptcy court erred by denying the motion to reopen Mr. Beeney's bankruptcy case, the appellate court identified a threshold issue: whether the § 524(a) permanent injunction prevented Mr. Patronite from naming Mr. Beeney as a defendant in the state court action in order to establish Mr. Beeney's liability for the accident. In other words, the bankruptcy appellate panel questioned whether § 524(a) even applied. Of course, if § 524(a) did not apply, reopening the case would not have been necessary.

The bankruptcy appellate panel identified *Green* as the seminal case and adopted its holding. *Beeney*, 142 B.R. at

363. In *Green*, tort claimants who had been injured in a fire on premises owned by the debtors sought, postdischarge, to continue litigation against the debtor solely to establish liability so that they could attempt to collect under an insurance policy. The bankruptcy court held that § 524 discharged the debt to the tort claimants and prevented their continuation of the litigation. The district court reversed and the Second Circuit affirmed the latter court. *Green*, 956 F.2d at 32. After noting that the vast majority of courts that have addressed the issue have determined that such a lawsuit could proceed so long as no collection efforts would be made against the debtor, the *Green* court concluded that the bankruptcy injunction of § 524 did not bar the litigation.

An intermediate court in California was presented with facts similar to the facts presented to us in this case. In *Forsyth v. Jones*, 57 Cal. App. 4th 776, 67 Cal. Rptr. 2d 357 (1997), Ronald Forsyth was injured as a result of the medical negligence of Dr. Kenneth Jones. Dr. Jones filed a petition under chapter 7 and listed Mr. Forsyth as one of his creditors. *Id.* at 779-80. After Dr. Jones received a chapter 7 discharge, Mr. Forsyth filed a suit against the doctor, expressly alleging that the purpose of the action was to establish Dr. Jones's " 'liability as a precondition to recovery from' " Dr. Jones's liability insurer. *Id.* at 779. Despite this allegation, only Dr. Jones was named as a defendant, not the insurer. The trial court dismissed Mr. Forsyth's lawsuit based upon Dr. Jones's argument that the underlying claim had been discharged in bankruptcy. *Id.* at 779-80. On appeal, the issue was whether Mr. Forsyth could proceed against Dr. Jones solely to recover from Dr. Jones's insurer. Noting that the vast majority of courts that have considered the issue have answered that question in the affirmative, the court held, "[s]ection 524 permits an action against a discharged debtor to fix the liability of the debtor's insurers." *Id.* at 782 (citing *Ortiz v. Workers' Comp. Appeals Bd.*, 4 Cal. App. 4th 392, 398, 5 Cal. Rptr. 2d 484 (1992)).

Ms. Lutz attempts to distinguish the facts of this case from *Green* and *Beeney*. She notes that in *Green* the

claimants filed their lawsuit before the chapter 7 petition was filed, and postpetition asked the court for permission to continue the lawsuit. She emphasizes the issue in *Green* was whether the bankruptcy court should have modified the permanent injunction to allow the lawsuit to continue. Here, she states that the Arreygues filed their lawsuit after the chapter 7 bankruptcy case was filed and never sought permission of the bankruptcy court to continue the action. Similarly, Ms. Lutz distinguishes *Beeney* because the state lawsuit in that case specifically provided that the plaintiff did not intend to proceed against either Mr. Beeney or his assets. Here, the Arreygues' complaint, Ms. Lutz notes, does not contain such limiting language.

While Ms. Lutz finds differences between the facts of the case before us and the facts in *Green* and *Beeney*, she does not explain why those distinctions are significant. In both *Green* and *Beeney*, the courts asked whether the § 524 injunction applied to the lawsuit before the court and answered the question in the negative. The rationale of those two cases makes Ms. Lutz's distinctions irrelevant. The § 524 injunction does not apply to prohibit a lawsuit against a discharged debtor solely to recover from the debtor's insurer. Consequently, the plaintiff may continue a lawsuit initiated before the bankruptcy was filed or commence a lawsuit after the discharge is granted. In either case, the debtor does not need the permission of the bankruptcy court.

Ms. Lutz argues that the superior court properly dismissed the Arreygues' complaint because the complaint does not contain an allegation, like the allegation in *Forsyth v. Jones*, that the plaintiffs do not seek to establish the defendant's personal liability. While such an allegation would have been appropriate and useful, the absence of such an allegation does not justify the dismissal of the Arreygues' case. Before the summary judgment was decided, the Arreygues acknowledged that Ms. Lutz had discharged her liability to them and that the sole purpose of their lawsuit was to establish her liability for the purposes of collecting from her insurance company. This is sufficient.

██ Finally, Ms. Lutz argues that the Arreygues have failed to produce sufficient evidence that she was covered by a policy of liability insurance at the time of the accident. In truth, Ms. Lutz and her attorneys have been very cagey about this issue. They neither deny nor affirm the existence of insurance. The existence or nonexistence of insurance is a fact particularly within the knowledge of Ms. Lutz, who now argues summary judgment should have been granted based upon the inability of the nonmoving party to prove this fact. Under such circumstances, courts are reluctant to grant summary judgment. *Mich. Nat'l Bank*, 44 Wn. App. at 905 (quoting *Felsman*, 2 Wn. App. at 496-97). Additionally, there is a recognized legal presumption that a party will produce evidence which is favorable to him or her if such evidence exists and is available. It follows that the withholding or failing to produce such evidence justifies the inference that the evidence, if produced, would be unfavorable. 2 JOHN HENRY WIGMORE, EVIDENCE § 285, at 192 (James H. Chadbourn ed., rev. ed. 1979). If this entire litigation was pointless because Ms. Lutz was not covered by liability insurance, why would Ms. Lutz and her attorneys have concealed this fact from the superior court? On summary judgment, the superior court should have presumed that Ms. Lutz was covered by a policy of liability insurance at the time of the accident.

We reverse the order on summary judgment and remand for trial.

SWEENEY and SCHULTHEIS, JJ., concur.