In re Kenneth Neal **DORNER**, Debtor.

**COPPER KETTLE MARINA, INC.,**

v.

**Kenneth Neal DORNER.**

**Bankruptcy No. B89–04128.**

United States Bankruptcy Court, N.D. Ohio, E.D.

March 25, 1991.

Timothy Downing, Ulmer & Berne, Cleveland, Ohio, for plaintiff.

Richard Baumgart, Dettelbach, Sicherman & Baumgart, Cleveland, Ohio, for defendant.

## MEMORANDUM OF OPINION AND DECISION

WILLIAM J. O'NEILL, Bankruptcy Judge.

Before the Court is the motion of Copper Kettle Marina, Inc. for modification of stay to name the Debtor, Kenneth Neal Dorner, a party to pending state court lawsuits. Debtor objects. This is a core proceeding within the Court's jurisdiction. 28 U.S.C. §§ 157(b)(2)(G), 1334. Hearing was held and the relevant facts adduced are essentially undisputed.

The Court adopts the following stipulations of the parties;

"1. Copper Kettle operates a marina in Lorain, Ohio.

2. Kenneth Dorner does or formally did business as K & K Auto Trim.

3. Dorner, d/b/a K & K Auto Trim was or is in the business of installing auto tops, boat tops and boat interior trim.

4. On or about July 5, 1988, Kenneth Dorner and his son, David Dorner ("the Dorners"), were doing work on the premises of Copper Kettle to install carpeting into a boat.

5. The Dorners performed the work in a boat storage facility located at Copper Kettle.

6. The Dorners were using an adhesive mastic called "Top Grip" manufactured by TACC International Corporation and distributed to the Dorners by Three Rivers Supply Company and/or Walters Textile.

7. The adhesive mastic, being extremely volatile, ignited, setting the boat and the building on fire.

8. The fire ultimately destroyed the building, the boats housed in it, and an extensive amount of property outside of the building.

9. Boat owners, other property owners and insurers have brought numerous claims, seeking to recover damages from Copper Kettle for losses caused by the fire of July 5, 1988.

10. In its answers to the numerous complaints, Copper Kettle alleged that it was not responsible for the damage caused by

the fire, but rather, the fire was due to the actions of the Dorners and accordingly, Copper Kettle filed cross-claims and/or third party claims against the Dorners and K & K Auto Trim to obtain indemnity and/or contribution pursuant to common law, and Ohio R.C. §§ 2307.31, 2307.32, and the right of set-off pursuant to R.C. § 2315.19.

11. After the filing of the claims against him by Copper Kettle, Kenneth Dorner filed his Chapter 7 Bankruptcy petition.

12. Upon the learning of the filing of the debtor's Bankruptcy petition, Copper Kettle dismissed without prejudice the cross-claims and third-party suits filed against Kenneth Dorner in all of the pending state actions.

13. Copper Kettle has filed a motion to modify the stay imposed by 11 U.S.C. § 362 in order to name Kenneth Dorner as a party to the state court proceedings."

In addition, on consideration of the transcript, pleadings and file, the Court finds:—

14. Exhibit A to Copper Kettle's motion reflects twenty-one (21) lawsuits are filed seeking determination of liability resulting from the July 5, 1988 fire.

15. In these lawsuits Copper Kettle raised defenses of contributory negligence and assumption of the risk. Debtor makes no assertion these defenses are frivolous.

16. Debtor's bankruptcy petition was filed October 6, 1989. Copper Kettle is scheduled as a general unsecured non-priority creditor on Schedule A–3. This debt which arose from the fire is listed as disputed.

17. Debtor was granted a discharge by order of January 19, 1990.

18. Debtor has emphysema and heart problems. (TRANS. p. 20). His annual income derived solely from K & K Auto Trim is approximately $17,000.00. (TRANS. p. 20).

Copper Kettle seeks modification of the automatic stay to name the Debtor a party to state court lawsuits arising from the July 5, 1988 fire. Kettle maintains this relief affords the right to obtain determina-

tion of their respective share of liability provided by Ohio Revised Code Sections 2307.31, 2307.32 and 2315.19. It is undisputed that Debtor's liability arising from the fire is a contingent, unliquidated claim discharged by this Court's order of January 19, 1990.

Debtor opposes requested relief. He alleges the injunctive provisions of Section 524 of the Bankruptcy Code are in effect. 11 U.S.C. § 524. Moreover, he asserts modification of the stay denies him the relief sought and obtained under the Bankruptcy Code; namely, his discharge.

Copper Kettle was properly scheduled and its claims against Debtor, though unliquidated, are discharged. It seeks to name Debtor a party in the state court actions merely to obtain determination of their respective share of liability arising from the fire. Ohio Revised Code Section 2315.19 details the effect of contributory negligence or implied assumption of risk as follows:—

"(D)(1) If contributory negligence or implied assumption of the risk is asserted as an affirmative defense to a negligence claim, if it is determined that the complainant or the person for whom he is legal representative was contributorily negligent or impliedly assumed a risk and that such contributory negligence or implied assumption of the risk was a direct and proximate cause of the injury, death, or loss to person or property in question, and if the complainant is entitled to recover compensatory damages pursuant to this section from more than one party, then, after it makes findings of fact or after the jury returns its general verdict accompanied by answers to interrogatories as described in division (B) of this section, the court shall enter a judgment that is in favor of the complainant and that states all of the following:

(a) Proportionate shares of the portion of the compensatory damages that represents noneconomic loss for each party against whom the judgment is entered and for the complainant or the person for whom he is legal representative, which

shares shall be computed by multiplying the portion of the compensatory damages that represents noneconomic loss as determined pursuant to division (B)(3) of this section by the respective percentages of negligence or implied assumption of the risk as determined pursuant to division (B)(4) of this section;

(b) In relation to the portion of the compensatory damages that represents non-economic loss as determined pursuant to division (B)(3) of this section, each party against whom the judgment is entered is liable to the complainant only for the proportionate share of that party as described in division (D)(1)(a) of this section ..."

Ohio Rev.Code § 2315.19(D)(1)(a), (b)

This Code section permits determination of fault of all parties and entitles set-off of non-economic damages attributable to the other parties. A co-defendant can only obtain this apportionment with respect to named parties. *Eberly v. Barmet Industries, Inc.*, No. 89AP040039, slip. op. at 14, 1990 WL 70058 (Ohio Ct.App. May 16, 1990). It is undisputed by Debtor that defenses of contributory negligence and applied assumption of the risk are not frivolously raised in the state court actions.

Ohio Revised Code Sections 2307.31 and 2307.32 delineate contribution among joint tortfeasors and enforcement of contribution respectively. These sections do not require that Debtor be a party to the lawsuits to preserve Copper Kettle's right to contribution. Section 2307.31(G) provides contribution may be enforced by separate action.

When discharge is granted, the automatic stay of Section 362 is dissolved and replaced by permanent injunctive provisions of Section 524. 11 U.S.C. §§ 362(a); 362(c)(2)(C); 524. Section 524 sets forth the effect of a discharge and provides, in relevant part,

"(a) A discharge in a case under this title—

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to

any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived ..."

11 U.S.C. § 524(a)(1); (a)(2)

These injunctive provisions are properly at issue.

Section 524 in general protects the debtor's fresh start by enjoining creditors whose claims have been discharged in bankruptcy. Specifically it precludes actions to collect or recover a "debt as a personal liability of the debtor". Its injunctive provisions must be considered in conjunction with the overall purposes of the Bankruptcy Code to permit modification under appropriate circumstances. *In re White Motor Credit Corp.*, 761 F.2d 270 (6th Cir.1985); *Shade v. Fasse*, 40 B.R. 198 (Bankr.D.Colo.1984); *In re McGraw*, 18 B.R. 140 (Bankr.W.D.Wisc.1982). Ohio Revised Code Section 2315.19 requires debtor's status as a party to the actions to permit determination of the parties' respective liability. The issue, therefore, is whether the injunctive provisions of the Bankruptcy Code preclude this determination.

Section 524 prevents actions against a debtor to recover or offset a discharged debt as a personal liability of the debtor. It also voids any judgment which determines debtor's personal liability predicated on a discharged debt. Its effect is limited to these purposes. Case law analyzing the scope of injunction focuses on the assurance that debtor remain unfettered from personal liability which interferes with his fresh start. *Owaski v. Jet Florida Systems, Inc.*, 883 F.2d 970 (11th Cir.1989). The injunction specifically does not enjoin actions against a debtor solely to determine liability of a third party. *Wimmer v. Mann*, 58 B.R. 953 (Bankr.W.D.Va. 1986) see 11 U.S.C. § 524(e). Moreover,

modification of the injunction is proper if continuation of a civil suit will not result in efforts to collect a judgment award from debtor or his property. *In re McGraw*, 18 B.R. 140 (Bankr.W.D.Wisc.1982), *Shade v. Fasse*, 40 B.R. 198 (Bankr.D.Colo.1984). Modification is appropriate if, 1) no great prejudice will result to the debtor from continuance of the civil suit and 2) hardship to the plaintiff caused by continuance of the injunction considerably outweighs the hardship to the debtor caused by modification. *McGraw*. This is the identical test employed to determine "cause" for relief from automatic stay in Section 362(d)(1). 11 U.S.C. § 362(d)(1). *In re Bock Laundry Machine Co.*, 37 B.R. 564 (Bankr.N.D.Ohio 1984). Relief from stay was granted for "cause" in the Chapter 7 case of Debtor's son, David Dorner, on the same basis requested herein. *In re David Dorner*, No. B90–01741 (Bankr.N.D.Ohio, Sept. 17, 1990).

 Section 524 enjoins Copper Kettle from commencing or continuing actions to establish Debtor's liability emanating from the July 5, 1988 fire. Consideration of the relevant equities, however, mandates modification of the injunction. Without it Copper Kettle is precluded from obtaining possible apportionment of liability in the lawsuits. Without apportionment, Kettle is denied the right to setoff the non-economic portion of damages attributable to Debtor's conduct. If the Debtor is not a party to the various lawsuits, Kettle is deprived of its statutory right afforded by Ohio Revised Code Section 2315.19 to have Debtor's liability severed. Debtor's hardship is the cost to defend these actions, should he deem it necessary. Depositions of the Debtor may also be an expense. While these costs could be significant they do not constitute great prejudice, nor do they outweigh the movant's right to apportionment and setoff. Copper Kettle seeks neither affirmative judgments nor recovery or offset of discharged debt as a personal liability of the Debtor. Modification of the injunction is, therefore, appropriate.

CONCLUSION

Copper Kettle's motion to modify stay to permit Debtor to be named a party in the prosecution of pending lawsuits is hereby granted.