In the Matter of FIRST AMERICAN HEALTH CARE OF GEORGIA, INC., and its wholly owned subsidiaries, Debtors.

Cathleen BROUSSARD, Plaintiff,

v.

FIRST AMERICAN HEALTH CARE OF GEORGIA, INC., Defendant.

Bankruptcy No. 96–20188.
Adversary No. 97–2080.

United States Bankruptcy Court,
S.D. Georgia,
Brunswick Division.

March 25, 1998.

William S. Orange, III, Brunswick, GA, for Plaintiff.

Walter J. Kruger, III, Atlanta, GA, for Defendant.

### ORDER ON DEFENDANT FIRST AMERICAN'S MOTION FOR SUMMARY JUDGMENT

LAMAR W. DAVIS, Jr., Bankruptcy Judge.

Defendant/Debtor First American filed its Motion for Summary Judgment on October 27, 1997. Broussard filed her response on November 25, 1997, and Defendant filed its reply on December 23, 1997. This matter constitutes a core proceeding over which this Court has jurisdiction. *See* 28 U.S.C. § 157(b)(2)(I). After considering the evidence submitted and the applicable authorities, I make the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

The following material facts are not disputed between the parties. First American filed its petition for relief under Chapter 11 on February 21, 1996, and its Second Amended and Restated Plan was confirmed on October 4, 1996. A merger was successfully negotiat-

ed with Integrated Health Services ("IHS") and its subsidiary, IHS of Brunswick, Inc., which closed on October 16, 1996, for a price of $ 329 million and took effect on November 15, 1996.

Prior to First American's bankruptcy, Plaintiff Cathleen Broussard asserted a contract claim against ABC/First American, which was tried and rejected by a jury in Texas in January 1994. In April 1994, Broussard appealed the case to the Court of Appeals for the 14th Judicial Circuit in Houston, Texas. (Pl's Compl., ¶ 3). Her appeal in the state court system was stayed, however, by the automatic stay of 11 U.S.C. § 362(a)(1). (Pl's Compl., ¶ 4).

Debtor scheduled Broussard's claim in its bankruptcy case as "disputed" and notices were sent to her as follows:

[I] Broussard (Jones), Cathleen W.
Martin, Micks, Garza & Bunce
Attn: George Martin/ Carlos Garza
1100 Rosenberg
Galveston, TX 77550
[ii] Broussard
MARTIN & GARZA
Attn: Carlos Garza
1100 Rosenberg
Galveston, TX 77550
[iii] Broussard
HEWITT LAW FIRM
Attn: Otto Hewitt, III
1600 East Highway 6
Suite 302
Alvin, TX 77511

(Def.'s Mot. Summ. J., Ex. 4).[1] Broussard was served notice of the bar date in this manner on several occasions. On May 23, 1996, Broussard was served through her attorneys with a true copy of the Notice of Commencement and Meeting of Creditors, which set the bar date for nongovernmental units for filing claims as June 24, 1996. (Ex. 5). Additionally, Broussard was served by mail with the initial "Plan of Reorganization"

and Disclosure Statement and later the Amended and Restated Plan of Reorganization and the Amended and Restated Disclosure Statement, all of which indicate June 24, 1996, as the bar date.[2] (Ex. 3, p2, 6; Ex. 4, ¶ 5, 7). A Second Amended Disclosure Statement was approved by this Court on September 13, 1996, which also states that the bar date was June 24, 1996. (Ex. 9; Ex. 10, p18). Thereafter, Broussard's counsel were each served by mail on September 17, 1996, with the Second Amended and Restated Plan of Reorganization, which was ultimately confirmed. (Ex. 4, ¶ 8). Broussard did not file a claim in the bankruptcy case.

At no time were any of the documents served on Broussard by mail returned to the First American as undeliverable. (Ex. 4, ¶ 11). Moreover, at no time did Broussard or her state action attorneys inform the Court that service was to made elsewhere. The confirmation hearing was held October 3, 1996, without appearance or objection by Broussard. The merger with IHS took place on October 16, 1996; thus, the effective date of the plan was November 15, 1996. During the same time as the confirmation process, on September 30, 1996, First American moved to approve rejection of its prepetition executory contract with Broussard, and served the motion on Broussard's counsel. (Ex. 12). Broussard filed a response on October 29, 1996, and the motion was granted on November 1, 1996. (Ex. 13, 14). Broussard indicated in her Response to Motion to Approve Rejection that she would file a "claim for breech [sic] damages in ordinary course of business", but did not do so. (Resp. Mot. Appr. Rej. of Contract). Aside from that response and this adversary proceeding, Broussard has not participated as a creditor in First American's bankruptcy case.

*Contentions of the Parties*

Broussard claims that, because notice was sent to her in care of her attorneys rather

1. Debtor filed this Motion for Summary Judgment with its Answer and Counterclaim. All exhibits are attached to First American's Answer and are incorporated by reference into the Motion for Summary Judgment. *All references to exhibits within this Order are intended to refer to Debtor's Motion for Summary Judgment, unless otherwise noted.*

2. The initial Plan was served on Broussard on April 27, 1996, and contains a definition of "disputed claim" as "an alleged claim or interest, respectively, against or with respect to any Debtor … as to which there is a dispute … which is the subject of pending litigation." (Ex. 3, p. 3).

than at her address, the requirements of Rule 2002 are not met. Broussard seeks a determination that her claim against First American was not discharged by the plan of reorganization, such that she may proceed with her state court appeal. (Pl's Compl., ¶ 11).

First American has filed a Motion for Dismissal of Appeal in the state court action. (Pl's Compl., ¶ 7). In its Answer and Counterclaim, Defendant/Debtor seeks to enforce the permanent injunction of 11 U.S.C. Section 524(a) and require Broussard to immediately dismiss the state court appeal against ABC/First American. (Def.'s Resp., ¶ 26). With its Answer, Debtor also filed this Motion for Summary Judgment.

## CONCLUSIONS OF LAW

Bankruptcy Rule 7056 incorporates Rule 56 of the Federal Rules of Civil Procedure, which provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). All evidence must be considered "in the light most favorable to the non-moving party." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 (11th Cir.1987). The moving party bears the initial burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the movant carries its burden, the burden then shifts to the nonmoving party to introduce "significant, credible evidence sufficient to show" that there is a genuine issue of material fact. *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir.1991).

Under Section 524, Broussard may not proceed with her appeal if her debt was discharged. 11 U.S.C. Section 524(a) provides:

A discharge in a case under this title operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

11 U.S.C. § 524(a)(2). In order to enforce the discharge injunction, Debtor must show that the debt was discharged under Section 1141, which states:

Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan discharges the debtor from any debt that arose before the date of such confirmation, . . . whether or not (i) a proof of the claim based on such debt is filed or deemed filed under 501 of this title; (ii) such claim allowed under section 502 of this title; (iii) or the holder of such claim has accepted the plan.

11 U.S.C. § 1141(d)(1). Once confirmed, the plan binds the debtor and all creditors, whether or not a creditor has accepted the plan. 11 U.S.C. § 1141(a). Thus, confirmation presumptively discharged all disputed claims, including Broussard's.

## I. Notice to Creditors

 Discharge under the Code, however, presumes that all creditors bound by the plan have been given notice sufficient to satisfy due process. First American must show that Broussard received notice before her claim was discharged.[3] This Court looks, therefore, to Bankruptcy Rules governing service of notice of the bar date, and to the jurisprudential due process doctrine of the Supreme Court and the Eleventh Circuit.[4] The Elev-

---

3. Section 523(a)(3) is inapplicable because Debtor is not an individual debtor for purposes of that code section. *In re Spring Valley Farms, Inc.*, 863 F.2d 832, 834 (11th Cir.1989).

4. The Eleventh Circuit has not yet spoken on the issue of whether a bankruptcy notice to an attorney constitutes notice to the client. The Third Circuit has held that "notice to an authorized attorney or agent must at least signify the client

for whom it is intended so that the attorney can know whom to advise to assert a claim in the bankruptcy." *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir.1985); *see also In re Osman*, 164 B.R. 709, 715 (Bankr.S.D.Ga.1993) (Davis, J.) (notice received by attorney did not indicate that either attorney or client had been scheduled as creditor and did not indicate that true party in interest was client).

enth Circuit has held that in a corporate Chapter 11 case, a claim is not discharged if notice of the bankruptcy was not sent to the creditor even if the creditor knew that a bankruptcy case was pending. *In re Spring Valley,* 863 F.2d 832, 835 (11th Cir.1989). In a footnote, however, it distinguishes without deciding a case where the creditor had actual knowledge of the claims bar date. *Id.* at 835, n. 2. Thus, Broussard's claim is discharged if she received legally sufficient notice of the commencement of the case.

The authorities cited by the Eleventh Circuit, and the court's own reasoning, emphasize a concern not merely that Rule 2002(a) be strictly complied with, but that "the statutory command for notice embodies a basic principle of justice — that a *reasonable opportunity to be heard must precede judicial denial of a party's claimed rights.*" *Id.* at 835 (quoting *City of New York v. New York, N.H. & H.R. Co.,* 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953)) (emphasis supplied). The Eleventh Circuit further emphasized due process grounds, stating:

> The language in *City of New York* clearly is not grounded in goals unique to the former bankruptcy act. The Court's emphasis on notice and opportunity to be heard underlines a due process concern.

863 F.2d at 835. The court stated that "due process prevents Section 1141 from being read to extinguish [creditors'] claims when no notice of the bar date for filing a proof of claim has been sent in compliance with Bankruptcy Rule 2002(a)(8)," 863 F.2d at 834; the court did not decide, however, whether due process required service on a creditor to be made at her home address rather than in care of attorneys handling her claim.

Rule 2002(a) provides that "the clerk ... shall give the debtor, the trustee, all creditors, and indenture trustees not less than 20 days notice by mail of ... (8) the time fixed for filing proofs of claims pursuant to Rule 3003(c)." FED. R. BANKR. P. RULE 2002. It does not specify what is a sufficient address; however, Rule 2002 does provide that service shall be made to the address as scheduled by the debtor, or set forth on a creditor's claim, or as otherwise designated in writing. FED. R. BANKR. P. 2002(g). Still, if the debtor's schedule utilizes an incorrect address at the outset, due process may render the notice ineffective.

In this case Broussard was scheduled as a creditor and sent notice of the commencement of the case in care of her counsel of record in her state lawsuit. The notice contained a claims bar date. Debtor mailed not only a notice of the bar date itself, but also each plan of reorganization and disclosure statement to Broussard at her counsel's address. Broussard does not dispute that the notices were received by her counsel, nor does she dispute that these attorneys represented her in the state law action which formed the sole basis of any claim she had.

■ Since Broussard did not direct that the notice be sent to a different address, all service continued to be made to those addresses shown in Debtor's schedules. Whether a creditor received adequate notice depends on the facts and circumstances of each case. *In re Eagle Bus Mfg., Inc.,* 62 F.3d 730, 735 (5th Cir.1995). Due process is met if notice is "reasonably calculated to reach all interested parties, reasonably conveys all of the required information, and permits a reasonable amount of time for response." *Mullane v. Central Hanover Bank,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

■ I hold that mailing notice of the bar date to Broussard in care of her state claim attorneys was reasonably calculated to inform Broussard of the information contained in the notice, specifically the bar date for filing claims; the notice sent to her thus meets the due process threshold. Broussard or her counsel were responsible for notifying the debtor, the trustee, or the court if she desired any change in her mailing address as it appeared on the schedules. *See Eagle Bus,* 62 F.3d at 736; *see also In re Solvation, Inc.,* 48 B.R. 670, 673 (Bankr.D.Mass.1985). Bankruptcy Rule 9006(e) states that "notice by mail is complete on mailing." Fed. R. Bankr.P. 9006. Together with the command of Rule 2002(a)(8) that notice must be given "by mail", these rules "imply that correctly mailed notice creates a presumption that proper notice was given." *Eagle Bus,* 62

F.3d at 735. Broussard has not challenged either the mailing or the receipt of the notice, only the address to which it was sent, which as stated above did not violate due process and is sufficient to discharge her claim.[5]

## II. Discharge Under 11 U.S.C. § 1141(d)(3)

Alternatively, Broussard asserts that her claim was not discharged because the plan of reorganization was a liquidating plan. Section 1141(d) provides:

> The confirmation of a plan does not discharge a debtor if—
> (A) the plan provides for the liquidation of all or substantially all of the property of the estate;
> (B) the debtor does not engage in business after consummation of the plan; and
> (C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.

11 U.S.C. § 1141(d)(3).[6] In order for Broussard's argument to succeed, all three of the above requirements must be met.

The Confirmed Plan provided for a merger of First American with IHS, structured as a stock purchase of "all of the issued and outstanding stock and capital stock of each of the Debtors, free and clear of all liens, claims, and encumbrances." Second Amended Plan of Reorganization, ¶ 6.01(a) at 19. Following the merger, First American was the surviving entity. *Id.* The Plan further provided:

> (a) ... [A]t *the election of IHS*, First American may then be liquidated and dissolved and all assets and liabilities of First American will thereupon automatically become assets and liabilities of Merger Sub 2 which may, at its option, change its name to "First American" or some similar name, in accordance with corporate procedures for a name change. Merger Sub 2 (as the direct or indirect subsidiary of IHS which acquires the assets and liabilities of First American at the conclusion of one or more of the aforesaid or similar transactions), or such other subsidiary of IHS which is the successor to First American, shall be, and is referred to in this Plan as, the "New Parent."

> (c) ... The New Parent, which shall be a direct or indirect wholly owned subsidiary of IHS, shall be deemed to be the reorganized Debtor upon any liquidation of the Debtors for all purposes of this Plan with respect to the rights and obligations of First American under the Plan and in its Bankruptcy Case, and shall assume and agree to pay any and all of First American's debts and obligations under this Plan. Each other Debtor shall be a wholly owned subsidiary of the New Parent and shall be deemed to be the reorganized Debtor for all purposes of this Plan with respect to such Debtor's rights and obligations under the Plan and in such Debtor's Bankruptcy Case. On or before the Effective Date, IHS shall provide funds or financial commitments to the New Parent and to each Debtor in amounts necessary to enable the New Parent and each Debtor

---

5. Broussard correctly notes that under the *Spring Valley* decision, a debt is not discharged if the creditor "failed to receive notice ... even if the creditor had actual knowledge of the general existence of the bankruptcy proceedings." *Id.* at 835. Broussard fails to mention, however, the court's distinction between actual knowledge of the case in general and actual knowledge of the bar date itself, an issue not before the Eleventh Circuit at that time. *Id.* at 835 n. 2. This Court's decision today does not attempt to resolve the issue of Broussard's actual knowledge of the bar date; however, such an issue would be difficult to resolve in a motion for summary judgment, where a subjective question of fact may exist as to what a creditor knew at a precise moment in time. Because I hold that Broussard received legally sufficient notice under Rule 2002, the question of actual knowledge need not be decided.

6. Broussard raised the issue of § 1141 discharge in her reply brief to the Motion for Summary Judgment; however, she leaves the argument of the issue to be "dealt with in briefs to be submitted by the parties." (Pl.'s Resp. Mot. Summ. J., unnumbered page 2). Defendant IHS does address the issue of § 1141 in its reply brief, but represents to the Court that the "parties have not discussed nor agreed to brief this issue at a later time." The reply brief of IHS was filed in this Court on December 23, 1997. No response on the § 1141 issue has been forthcoming from Broussard; this Court therefore assumes that Plaintiff rests her argument solely upon the language of the statute.

to consummate each Debtor's obligations under this Plan.

(d) ... Upon any liquidation of First American and the assumption by the New Parent of First American's liabilities, First American shall be entitled to dissolve, shall be deemed to have satisfied all of its obligations, shall have complied in all respects with all legal requirements for dissolution of a corporation under applicable non-bankruptcy law, and shall have no further liabilities or obligations to any party in interest.

Second Amended Plan of Reorganization, ¶ 6.01 (emphasis supplied).

▪ Where a plan of reorganization provides viable options other than to liquidate and distribute property of the estate, it is not a liquidating plan for purposes of section 1141. *In re T–H New Orleans Ltd. Partnership*, 116 F.3d 790, 803–804 (5th Cir.1997) (not 'liquidating' where plan provided either that hotel be sold or refinanced to pay debt). Moreover, where the reorganized Debtor's assets are not held in trust and it continues to engage in ongoing business operations, such post-confirmation history is "inconsistent in any way with liquidation." *In re Penn Cent. Transp. Co.*, 944 F.2d 164, 168–170 (3d Cir.1991), *cert. denied*, 503 U.S. 906, 112 S.Ct. 1262, 117 L.Ed.2d 491 (1992) (plan provided for change in name and shift of assets to reorganized company after stock acquisition). Debtor's Confirmed Plan provides an option to IHS to liquidate First American after confirmation; it does not mandate that result. Moreover, the merger specifically envisions that the business of each Debtor is to continue uninterrupted. Distribution under the plan comes not from the property of the estate, but from capital provided by IHS under the terms of the merger and from cash flow of the surviving business. I find, therefore, that the plan of reorganization of First American is not a liquidating plan and that the requirements of Section 1141(d)(3) are not met; Broussard's claim is therefore discharged pursuant to 11 U.S.C. § 1141(d)(1).

## ORDER

Pursuant to the foregoing Findings of Fact and Conclusions of Law, IT IS THE ORDER OF THIS COURT that the Motion for Summary Judgment of Defendant, IHS, is GRANTED. Plaintiff's claims against Debtor are discharged and the discharge injunction shall bar any further collection effort.