**In re JASON PHARMACEUTICALS, INC., Debtor.**

**No. 93–5–0920–SD.**

United States Bankruptcy Court,
D. Maryland,
at Baltimore.

July 6, 1998.

Deborah H. Devan, Sonya F. Lorge, Neuberger, Quinn, Gielen, Rubin & Gibber, P.A., Baltimore, MD, for Debtor and St. Paul Fire & Marine in Bankruptcy Court.

Lance D. Schreiner, Bismark, ND, for Debtor in state court.

John D. Burns, Greenan, Walker, Trainor & Billman, Greenbelt, MD, for John and Sherry Skees in Bankruptcy Court.

Timothy Purdon, Bismark, ND, for John and Sherry Skees in state court.

Robert L. Hanley, Towson, MD, for the Creditors Committee in Bankruptcy Court.

Karen H. Moore, Assistant U.S. Trustee, Office of U.S. Trustee, Baltimore, MD, for U.S. Trustee.

## *MEMORANDUM & ORDER*

WILLIAM A. HILL, Bankruptcy Judge.

Before the Court is the Motion to Modify Discharge Injunction filed by John and Sherry Skees ("Skees") in the confirmed and consummated Chapter 11 case of Jason Pharmaceuticals, Inc. ("Jason"). By their motion, the Skees seek leave of the Court to continue their products liability suit against Jason in the District Court of Ward County, North Dakota. Jason and its insurer, St. Paul Fire

and Marine Insurance Co. ("St. Paul"), jointly resist the Skees' motion, arguing Jason's discharge in bankruptcy as a defense to the state court action.[1] A hearing was held in this matter before the undersigned, sitting by special designation, on June 8, 1998.

## I. FACTS

During the 1980s and early 1990s, Jason produced the weight-loss product "Medifast," which it distributed and sold exclusively through medical doctors in conjunction with its "Medifast Modified Fasting Program" ("Medifast Program"). Sherry Skees became a participant in the Medifast Program, and began purchasing and ingesting Medifast, in September 1989. In February 1990, after suffering a gallbladder attack, Mrs. Skees underwent surgery to have her gallbladder removed.

Jason filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code ("Code") on February 11, 1993. Jason's Second Amended Plan of Reorganization ("Plan") was confirmed by Court Order on March 29, 1994. Jason's Plan was fully consummated, and its case closed, on June 4, 1996. Thereafter, Jason was sold to new owners who were unrelated to its bankruptcy proceedings.

In August 1995, the Skees filed suit against Jason in the District Court of Ward County, North Dakota, alleging, inter alia, that Mrs. Skees' ingestion of Medifast caused her to be ill and necessitated the removal of her gallbladder. St. Paul hired North Dakota counsel to defend Jason. In September 1995, Jason's counsel answered the Skees' complaint, and subsequently answered their January 1997 Amended Complaint.

In April 1997, Jason's counsel notified the Skees of its bankruptcy proceedings, and subsequently moved the state district court to enjoin the continuation of the Skees' action, as well as for summary judgment, based upon the March 29, 1994 Confirmation Order of this Court. On June 16, 1997, the state district court enjoined the Skees' proceedings against Jason pending approval to continue

therewith from "an appropriate federal court." On July 28, 1997, it denied reconsideration of its June 16 Order.

On December 1, 1997, the Skees filed a Motion to Modify Discharge Injunction. By their motion, the Skees seek leave of the Court to proceed in their state court action against Jason, through which they seek a determination of its liability in order to recover from its insurer St. Paul. The Skees seek no recovery from Jason, maintaining their suit against it only nominally in order to reach St. Paul. They argue that the Plan and Confirmation Order, as well as the case law, allow them to pursue their action.

Jason and St. Paul resisted the motion by their joint Memorandum of Law in Opposition to Motions to Reopen Case and Modify Discharge Injunction, filed on January 8, 1998. They argue that the Skees' claim, although filed post-petition, was discharged, along with all pre-petition claims, as a result of its bankruptcy proceedings, and further contend that the Skees' action violates the permanent injunction relating to discharged debts in bankruptcy. As an additional consideration, they argue that St. Paul is prejudiced by the Skees' action, as Jason's discharge in bankruptcy precludes it from asserting a claim against Jason for a deductible under its insurance policy. They concede, however, that "neither the Plan nor the Confirmation Order discharge St. Paul from a claim of the Skees."

Two issues have thus been presented in this matter for the Court's determination, namely, whether the Skees' claim against Jason was indeed discharged in Jason's bankruptcy proceedings, and whether the Skees may proceed nominally against Jason in order to recover from its insurer St. Paul. The Court's analysis of these issues follows.

## II. DISCUSSION OF LAW

1. *Whether the Skees' Claim was Discharged in Jason's Bankruptcy Proceedings*

■ Ordinarily, the confirmation of a plan or reorganization discharges the Chap-

1. Corporations in Chapter 11 are not necessarily eligible to receive a discharge in bankruptcy. However, Jason was eligible to receive, and did

receive, a discharge in bankruptcy upon confirmation of its plan of reorganization, as will be later discussed.

ter 11 debtor from all liability on its pre-confirmation debt,[2] save that excepted from discharge under Section 523, and additionally serves to both "vest[ ] all property of the estate in the debtor," and leave "the property dealt with by the plan ... free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor." 11 U.S.C. § 1141(b)-(d); *see United States v. Carolina Parachute Corp.*, 907 F.2d 1469, 1474 (4th Cir.1990); *see also United States v. Continental Airlines (In re Continental Airlines)*, 134 F.3d 536, 540 (3d Cir.1998) ("Section 1141 provides for the discharge of pre-petition debts after completion of a bankruptcy proceeding."); *United States v. Victor*, 121 F.3d 1383, 1387 (10th Cir.1997) ("Section 1141 of the Bankruptcy Code discharges any debt that arose before the date of confirmation of the reorganization plan...."). Therefore, in order to determine whether a debtor has been discharged from liability on a debt, it is important to ascertain when the debt arose. That inquiry, as with many others in bankruptcy, begins with the definition of the term in question.

The term "debt" is defined under the Code as being, simply, "liability on a claim." 11 U.S.C. § 101(12). Correspondingly, the term "claim" is defined under the Code to signify, in relevant part, a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[,]"[3] 11 U.S.C. § 101(5), and thereby evinces Congress' intent, by its use of this language, "to adopt the broadest available definition of [the term],"[4] *Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991). *See Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 558, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990); *see also Stewart Foods, Inc. v. Broecker (In re*

---

**2.** Section 1141 contains both the general rule and exception to discharge under Chapter 11 of the Code. The general rule under Section 1141(d)(1)(A), granting a Chapter 11 debtor a discharge of all its pre-confirmation debt, was cited above; the exception, as contained within Section 1141(d)(3), follows:

The confirmation of a plan does not discharge a debtor if—
(A) the plan provides for the liquidation of all or substantially all of the property of the estate;
(B) the debtor does not engage in business after consummation of the plan; *and*
(C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.
11 U.S.C. § 1141(d)(3) (emphasis added); *see generally Financial Sec. Assurance Inc. v. T–H New Orleans Ltd. Partnership (In re T–H New Orleans Ltd. Partnership)*, 116 F.3d 790, 804 (5th Cir.1997) (stating general rule and exception to discharge under Section 1141); *Norwest Bank Neb., N.A. v. Tveten (In re Tveten)*, 82 B.R. 95, 96 (D.Minn.1987) (same). In turn, Section 727(a) provides in pertinent part that, "[t]he court shall grant the debtor a discharge unless ... the debtor is not an *individual* [.]" 11 U.S.C. § 727(a)(1) (emphasis added). Thus, a corporate debtor in Chapter 11 is, by definition, precluded from meeting the requirement of Section 727(a)(1), and, by extension, that of Section 1141(d)(3)(C). However, the provisions of Section 1141(d)(3) are written in the conjunctive, rather than the disjunctive; accordingly, "if any one provision does not apply, confirmation of a plan results in the discharge of debt." *In re River Capital Corp.*, 155 B.R. 382, 387 (Bankr.E.D.Va.1991); *see In re T–H New Orleans Ltd. Partnership*, 116 F.3d at

804; *In re Rath Packing Co.*, 55 B.R. 528, 537 (Bankr.N.D.Iowa 1985); *cf. Dominguez v. Miller (In re Dominguez)*, 51 F.3d 1502, 1508 (9th Cir. 1995) ("[C]onfirmation of a plan discharges a corporation of all its debts ... unless it is a liquidating plan."); *see, e.g. Norwest Bank Neb., N.A. v. Tveten (In re Tveten)*, 97 B.R. 541, 542 (Bankr.D.Minn.1989). Thus, where, as here, the plan of a corporate debtor in Chapter 11 does not provide for the liquidation of all or substantially all of the property of the estate and the debtor continues to engage in business after its plan is consummated, the debtor is entitled to a discharge in bankruptcy. *In re Ocean Downs Racing Assoc. Inc.*, 164 B.R. 245, 247 (Bankr. D.Md.1993); *see Broussard v. First Am. Health Care of Ga., Inc. (In re First Am. Health Care of Ga., Inc.)*, 220 B.R. 720, 725–26 (Bankr.S.D.Ga. 1998).

**3.** The Supreme Court has divined from Congress' intent that the meanings of the terms "debt" and "claim" are coextensive. *See Davenport*, 495 U.S. at 557, 110 S.Ct. at 2130; *Johnson*, 501 U.S. at 84, 111 S.Ct. at 2154 n. 5. In this respect, "a creditor has a 'claim' against the debtor and the debtor owes a 'debt' to the creditor." 2 Lawrence P. King et al., *Collier on Bankruptcy* ¶ 101.12, at 101–58 (15th ed. rev. 1998).

**4.** The combined effect of these definitions further reinforces "Congress' broad ... view of the class of obligations that qualify as a 'claim' giving rise to a 'debt.'" *Cohen*, —— U.S. at ——, 118 S.Ct. at 1216 (internal quotation marks omitted, quoting *Davenport*, 495 U.S. at 558, 110 S.Ct. at 2130–31).

*Stewart Foods, Inc.*), 64 F.3d 141, 144 (4th Cir.1995) ("Congress intended to adopt the broadest possible definition of the term 'claim,' so that a bankruptcy case would deal with all of the debtor's legal obligations."). In turn, a "right to payment" is defined by the Supreme Court as, "nothing more nor less than an enforceable obligation." *Davenport*, 495 U.S. at 559, 110 S.Ct. at 2131; *see Cohen v. de la Cruz,* —— U.S. ——, ——, 118 S.Ct. 1212, 1216, 140 L.Ed.2d 341 (1998) (quoting same). In this connection, "any right to payment which arises prebankruptcy constitutes pre-petition debt and is discharged, absent an applicable exception." *River Place E. Hous. Corp. v. Rosenfeld (In re Rosenfeld)*, 23 F.3d 833, 836 (4th Cir.) (citing 11 U.S.C. § 524(a)(2)), *cert. denied*, 513 U.S. 874, 115 S.Ct. 200, 130 L.Ed.2d 131 (1994). Therefore, the Court's next inquiry turns upon when the Skees' right to payment arose.

▮▮▮▮ "[T]o determine when a claim arises for bankruptcy purposes, reference is to be made to federal bankruptcy law rather than to state law." *Butler v. NationsBank, N.A.*, 58 F.3d 1022, 1029 (4th Cir.1995); *see Grady v. A.H. Robins Co.*, 839 F.2d 198, 201–03 (4th Cir.), *cert. dismissed*, 487 U.S. 1260, 109 S.Ct. 201, 101 L.Ed.2d 972 (1988) [5]; *see also Teates v. Kuranda (In re Kuranda)*, 122 B.R. 264, 268 (Bankr.E.D.Va.1990) ("[I]t is irrelevant whether [the plaintiff] has satisfied all the technical elements for a cause of

action ... for indemnity at state law. All that is necessary is that a 'right to payment' may arise."). Under federal bankruptcy law within the Fourth Circuit, " 'a right to payment' arises at the 'time when acts giving rise to the alleged liability were performed.' " *In re A.H. Robins, Co.*, 63 B.R. 986, 993 (Bankr.E.D.Va.1986) (quoting *In re Johns-Manville Corp.*, 57 B.R. 680, 690 (Bankr. S.D.N.Y.1986)), *aff'd sub nom. Grady v. A.H. Robins Co.*, 839 F.2d 198 (4th Cir.), *cert. dismissed*, 487 U.S. 1260, 109 S.Ct. 201, 101 L.Ed.2d 972 (1988); *see Grady*, 839 F.2d at 203; *Thompson v. Board of Trustees (In re Thompson)*, 182 B.R. 140, 153 (Bankr. E.D.Va.1995); *accord Lovett v. Honeywell, Inc. (In re Transp. Sys. Int'l, Inc.)*, 110 B.R. 888, 894 (D.Minn.1990), *aff'd*, 930 F.2d 625 (8th Cir.1991); *Wisconsin Barge Lines, Inc. v. United States (In re Wisconsin Barge Lines, Inc.)*, 91 B.R. 65, 68 (Bankr.E.D.Mo. 1988).

Under instant facts, the Skees' causes of action against Jason constitute "claims" within the meaning of 11 U.S.C. § 101(5); that their "right to payment" against Jason may be unliquidated, contingent, unmatured, or disputed does not alter this fact. *See* 2 Lawrence P. King et al., *Collier on Bankruptcy* ¶ 101.05[6], at 101–36.3 (15th ed. rev.1998) ("As distinguished from prior bankruptcy law, tort claims constitute claims, and thus are payable out of the estate, and constitute

---

5. In *Grady*, the Fourth Circuit provided a detailed articulation of the reasoning underlying its position, as follows:

We commence with the proposition that "... except where federal law, fully apart from bankruptcy, has created obligations by the exercise of power granted to the federal government, a claim implies the existence of an obligation created by State law." *Vanston Committee v. Green*, 329 U.S. 156, 167, 170, 67 S.Ct. 237, 242, 243, 91 L.Ed. 162 (1946) (Justice Frankfurter concurring), and further, from that concurring opinion, that "[b]ankruptcy legislation is superimposed upon rights and obligations created by the laws of the States." 329 U.S. at 171, 67 S.Ct. at 244. The opinion of the court in *Vanston* further stands for the proposition that "In determining what claims are allowable and how a debtor's assets are to be distributed, a bankruptcy court does not apply the law of the State where it sits." 329 U.S. at 169, 67 S.Ct. at 240. So, the bankruptcy Code is superimposed upon the law of

the State which has created the obligation. Congress has the undoubted power under the bankruptcy article, U.S. Const. Art. I, § 8 cl. 4, to define and classify claims against the estate of a bankrupt. *See Carpenter v. Wabash Ry. Co.*, 309 U.S. 23, 28, 60 S.Ct. 416, 418, 84 L.Ed. 558 (1940); *Kuehner v. Irving Trust Co.*, 299 U.S. 445, 450, 57 S.Ct. 298, 300, 81 L.Ed. 340 (1937). In the case of a claim as noted above, the legislative history shows that Congress intended that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in bankruptcy. The Code contemplates the broadest possible relief in the bankruptcy court. Also the history tells us that the automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws.... Absent a stay of litigation against the debtor, dismemberment rather than reorganization would, in many or even most cases, be the inevitable result. 839 F.2d at 201–02.

**320**

dischargeable debts.... Under the Code the fact that the tort claim may be unliquidated or disputed does not mean that it is not a claim."); *id.*, ¶ 101.05[1], at 101–26–27 ("Neither the contingency of the debt nor the immaturity of the obligation affects whether a right to payment is a claim."); *see also Kewanee Boiler Corp. v. Smith (In re Kewanee Boiler Corp.),* 198 B.R. 519, 528 (Bankr.N.D.Ill.1996) ("Clearly persons whose injuries manifest themselves before confirmation have 'claims' under the § 101(5) definition, even if liability or damages are still unresolved"); *In re Johns–Manville Corp.,* 57 B.R. at 687–88 ("Damages which are considered unmatured, unliquidated and contingent, clearly fall within the definition of a claim.... At this juncture Carpenter and Kowalski's claims are contingent and unliquidated because there has been no determination yet in the state court actions on their possible liability."). This "right to payment" arose pre-petition, as the conduct giving rise to their claims occurred prior to the filing of Jason's bankruptcy petition.[6] Accordingly, under the ruling of the Court of Appeals for the Fourth Circuit in *In re Rosenfeld,* the Skees' right to payment was discharged in Jason's bankruptcy proceedings, "absent an applicable exception." 23 F.3d at 836.

Notably, neither the Plan nor the Confirmation Order constitute such an "exception." Both the Plan and the Confirmation Order provide that:

Confirmation of the Plan shall discharge the Debtor from all claims and all debts (as those terms are defined in 11 U.S.C. § 101), whether such claims or debts are reduced to judgment or not, liquidated or unliquidated, contingent or non-contingent, asserted or non-asserted, fixed or unfixed, matured or unmatured, disputed or undisputed, legal or equitable, known or unknown, that arose before the confirmation of the Plan, including without limitation, liabilities of a kind specified in 11 U.S.C. § 502(g), (h) and (i), whether or not a proof of claim is filed or deemed filed under 11 U.S.C. § 502 of the Code, or whether or

not the holder of such claim has accepted the Plan[.]

The Plan provided for product liability claims in paragraph 2.09, "Class Nine: The Claims of Holders of Product Liability Claims." These claims were treated in paragraph 4.09, which provides as follows:

The holders of Class Nine Claims *are plaintiffs in product liability suits against the debtor.* All Class Nine Claims are Disputed Claims until their claims are settled or litigated to final order. The Debtor has insurance coverage for these claims if and when they become Allowed Claims. To the extent that any suits *have been filed by the holders of Class Nine Claims which are pending and not settled at Confirmation, those suits will continue to be litigated in the appropriate forums.* To the extent that all or any portion of an Allowed Class Nine Claim is covered by insurance, the Debtor is not responsible for payment of such portion of an Allowed Class Nine Claim.

(Emphasis added). Thus, the Plan contemplated treatment of plaintiffs "in product liability suits against the debtor," that is, known plaintiffs already in litigation against Jason. It only excepted from discharge then-pending suits which were "not settled at [c]onfirmation." Clearly, the Skees' suit fails to meet this exception.

Therefore, having found no "applicable exception" to discharge, the Court concludes that the Skees have a "claim," as that term is defined within the context of bankruptcy; that the claim arose pre-petition and was discharged *as against Jason* pursuant to confirmation of the Plan; and that the Skees may not proceed against Jason in any way, other than nominally, in satisfaction of their claim. The only question remaining for determination, then, is whether the Skees may proceed nominally against Jason in their efforts to recover from its insurer St. Paul, or whether Jason's discharge in bankruptcy shelters St. Paul from derivative liability on the Skees' claim.

6. Sherry Skees began participation in the Medifast Program in 1989. She experienced a gallbladder attack, and had her gallbladder removed, in 1990, both of which she attributed to the use of Medifast. Jason filed its petition in bankruptcy in 1993.

### 2. Whether the Skees may Proceed Nominally Against Jason to Recover Against its Insurer St. Paul

The filing of a petition in bankruptcy gives rise to an automatic stay pursuant to Section 362, *Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 219 (4th Cir.1994), "which generally prevents third parties from taking action that could affect the property of the bankruptcy estate," *United States v. Carolina Parachute Corp.*, 907 F.2d 1469, 1471 (4th Cir.1990). *See also Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 559, 110 S.Ct. 2126, 2131, 109 L.Ed.2d 588 (1990) ("Section 362(a) automatically stays a wide array of collection and enforcement proceedings against the debtor and his property."). "The stay is limited to actions that could have been instituted before the petition was filed or that are based on claims that arose before the petition was filed.... [It] is also applicable to 'any act to obtain possession of property of the estate or of property from the estate' and to 'any act to create, perfect, or enforce any lien against property of the estate.'" *Bellini Imports, Ltd. v. Mason & Dixon Lines, Inc.*, 944 F.2d 199, 201 (4th Cir.1991) (quoting 11 U.S.C. § 362(a)(3)-(4)); *see generally* 3 Lawrence P. King et al., *Collier on Bankruptcy* ¶ 362.01, at 362–11 (15th ed. rev.1998) ("Section 362 provides for a broad stay of litigation, lien enforcement, and other actions, judicial or otherwise, that are attempts to enforce or collect pre-petition claims. It also stays a wide range of actions that would affect or interfere with property of the estate, property of the debtor, or property in the custody of the estate.").

Confirmation of a plan of reorganization, in conjunction with discharging pre-confirmation indebtedness of the debtor, replaces the automatic stay with a permanent injunction arising under Section 524(a), which prohibits any attempt to hold the debtor liable on discharged debt.[7] *See Waswick v. Stutsman County Bank (In re Waswick)*, 212 B.R. 350, 352 (Bankr.D.N.D.1997); *Wimmer v. Mann (In re Mann)*, 58 B.R. 953, 956 (Bankr. W.D.Va.1986); *see also River Place E. Hous. Corp. v. Rosenfeld (In re Rosenfeld)*, 23 F.3d 833, 836 (4th Cir.) ("The discharge operates to permanently stay any attempt to hold the debtor personally liable for discharged debts."), *cert. denied*, 513 U.S. 874, 115 S.Ct. 200, 130 L.Ed.2d 131 (1994); *Carolina Parachute Corp.*, 907 F.2d at 1474 (the automatic stay is lifted upon plan confirmation). The purpose of the permanent injunction is to provide the debtor with a "fresh start," to wit, "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt," *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). *See Green v. Welsh*, 956 F.2d 30, 33 (2d Cir.1992); *Walker v. Wilde (In re Walker)*, 927 F.2d 1138, 1141 (10th Cir.1991); *Greiner v. Columbia Gas Transmission Corp. (In re Columbia Gas Transmission Corp.)*, 219 B.R. 716, 719–20 (S.D.W.Va.1998).

However, the discharge in bankruptcy, along with the coextensive permanent injunction and fresh start, are exclusive to the debtor, and *do not otherwise affect the enforcement of any underlying debt, or any nondebtor liability thereon.*[8] *See Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 53 (5th Cir.1993); *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 760 (5th Cir.1995); *First Fidelity Bank v. McAteer*, 985 F.2d

---

**7.** Section 524(a) provides in relevant part that a discharge in bankruptcy:

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section ... 1141 ... of this title, whether or·not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not the discharge of such debt is waived[.]

11 U.S.C. § 524(a)(2).

**8.** When a debtor's indebtedness is discharged by confirmation, the debtor is freed from any legal obligation of repayment thereon. However, the discharged debt is not extinguished, but continues. In this respect, the debtor's moral obligation to repay its debt continues unabated, but is at the debtor's sole discretion to be fulfilled or denied. Furthermore, and more importantly, the discharge effected by plan confirmation in no way alleviates nondebtor liability for the same indebtedness.

114, 118 (3d Cir.1993); *Landsing Diversified Properties–II v. First Nat'l Bank & Trust Co. (In re Western Real Estate Fund, Inc.),* 922 F.2d 592, 600 (10th Cir.1990), *modified sub nom. Abel v. West,* 932 F.2d 898 (10th Cir.1991); *cf. Johnson v. Home State Bank,* 501 U.S. 78, 82, 111 S.Ct. 2150, 2153, 115 L.Ed.2d 66 (1991) ("a discharge extinguishes only 'the personal liability of the debtor.' ") (quoting 11 U.S.C. § 524(a)(1)); *Teamsters Joint Council No. 83 v. Centra, Inc.,* 947 F.2d 115, 121 (4th Cir.1991) ("The law is clear that discharge of a debtor does not affect the liability on the debt of any co-debtors."). This fundamental principle is codified in Section 524(e), which provides that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e).

■ Similarly, just as the discharge is personal as to the debtor, so too is the permanent injunction resulting therefrom. The permanent injunction extends only to efforts seeking post-confirmation recovery of discharged indebtedness from the debtor, and specifically "excludes from its operation efforts to recover from other entities [which] might be liable for the discharged debt." *In re Lembke,* 93 B.R. 701, 702 (Bankr.D.N.D. 1988); *see Owaski v. Jet Fla. Sys., Inc. (In re Jet Fla. Sys., Inc.),* 883 F.2d 970, 975 (11th Cir.1989) (per curiam). Thus, a party who is derivatively liable for the indebtedness of the debtor, such as its insurer, remains so after confirmation and the debtor's discharge. *See Hawxhurst v. Pettibone Corp.,* 40 F.3d 175, 181 (7th Cir.1994); *Bursch v. Beardsley & Piper,* 971 F.2d 108, 114 (8th Cir.1992); *In re Jet Fla. Sys., Inc.,* 883 F.2d at 975. Nevertheless, proceeding to enforce derivative liability can be a delicate undertaking for the

creditor, which must not run afoul of Section 524(a).

■ In seeking recovery from a debtor's insurer, while simultaneously honoring the permanent injunction against asserting post-confirmation debtor liability on discharged debt, the creditor is confined to act within a very narrow swath of permissible conduct— squeezed, as it were, between Section 524(a) and Section 524(e). In this connection, courts have precisely defined the compass of such conduct by their nearly unanimous agreement that Section 524(e) permits a creditor to bring, and proceed in, an action nominally directed against a discharged debtor *for the sole purpose of proving liability on its part as a prerequisite to recovering from its insurer.*[9] *See Hawxhurst,* 40 F.3d at 179–80; *In re Edgeworth,* 993 F.2d at 53–54; *Hendrix v. Page (In re Hendrix),* 986 F.2d 195, 197 (7th Cir.1993); *McAteer,* 985 F.2d at 118; *Green,* 956 F.2d at 35; *In re Shondel,* 950 F.2d 1301, 1306–07 (7th Cir.1991); *International Bus. Machs. v. Fernstrom Storage & Van Co. (In re Fernstrom Storage & Van Co.),* 938 F.2d 731, 733–34 (7th Cir.1991); *In re Walker,* 927 F.2d at 1142; *In re Jet Fla. Sys., Inc.,* 883 F.2d at 973–74; *Federal Deposit Ins. Corp. v. Pappas (In re Pappas),* 106 B.R. 268, 271 (D.Wyo.1989); *Patronite v. Beeney (In re Beeney),* 142 B.R. 360, 363 (9th Cir. BAP 1992); *In re Gibson,* 172 B.R. 47, 49 (Bankr.W.D.Ark.1994); *Cooper v. Walker (In re Walker),* 151 B.R. 1006, 1008 (Bankr. E.D.Ark.1993); *In re Czuba,* 146 B.R. 225, 228–29 (Bankr.D.Minn.1992); *In re Greenway,* 126 B.R. 253, 255 (Bankr.E.D.Tex.1991); *Copper Kettle Marina, Inc. v. Dorner (In re Dorner),* 125 B.R. 198, 202 (Bankr.N.D.Ohio 1991); *In re Traylor,* 94 B.R. 292, 293 (Bankr.E.D.N.Y.1989); *In re Lembke,* 93 B.R. 701, 702–03 (Bankr.D.N.D.1988); *In re Mann,* 58 B.R. at 956; *In re McGraw,* 18

---

**9.** The Court of Appeals for the Seventh Circuit explained the analytic framework supporting nominal actions against discharged debtors, as follows:

The reasoning is that a suit to collect merely the insurance proceeds and not the plaintiff's full damages (should they exceed the insurance coverage) would not create a "personal liability of the debtor," because only the insurance company would be asked to pay anything, and hence such a suit would not infringe the dis-

charge. 11 U.S.C. § 524(a)(2). It would be like a suit against a guarantor of the [debtor's] debt. An alternative line of reasoning proceeds from the statutory reminder that a discharge "does not affect the liability of any other entity on [the debtor's] debt," 11 U.S.C. § 524(e)—and the insurance company is the other.

*Hendrix v. Page (In re Hendrix),* 986 F.2d 195, 197 (7th Cir.1993).

B.R. 140, 143 (Bankr.W.D.Wis.1982); 4 Lawrence P. King et al., *Collier on Bankruptcy* ¶ 524.05, at 524–36 (15th ed. rev.1998); *see also Jessie v. Honosky (In re Honosky)*, 6 B.R. 667, 669–70 (Bankr.S.D.W.Va.1980) (lifting the automatic stay "to the extent of the Debtor's insurance coverage"); *but cf. Greiner v. Columbia Gas Transmission Corp. (In re Columbia Gas Transmission Corp.)*, 219 B.R. 716, 720–21 (S.D.W.Va.1998) (denying creditor right to sue discharged debtor because (1) no primary insurer, only an excess insurer, was available; (2) excess insurer liability was not triggered under policy until debtor "legally obligated to pay" a sum; and (3) because creditor's claim was discharged in bankruptcy, the debtor could never be "legally obligated to pay" on the discharged debt). This exception to the permanent injunction under Section 524(a) is necessarily conditioned upon the debtor's being exempted from any exposure to personal expense or liability, resulting from the creditor's action, which would imperil its "fresh start." *See In re Walker*, 927 F.2d at 1142; *In re Jet Fla. Sys., Inc.*, 883 F.2d at 975; *In re Edgeworth*, 993 F.2d at 53–54.

By bringing suit against Jason, the Skees seek only to establish and determine the extent of its liability so that they may recovery from its insurer St. Paul. In essence, their cause lies only against potential insurance proceeds, and not against any assets of the reorganized debtor. Furthermore, as Jason notes in its brief to the Court, it has been spared the expense of hiring counsel in the state court action by St. Paul.

### III. ORDER

According to the foregoing analysis, it is ADJUDGED and ORDERED that the provisions of 11 U.S.C. § 524 do not prohibit the movants, John and Sherry Skees, from maintaining their pending action in the District Court of Ward County, North Dakota, Civil Number 96–C–0190, against the debtor-defendant, Jason Pharmaceuticals, Inc., solely in order to effectuate derivative recovery from its insurer, St. Paul Fire and Marine Insurance Co. In conjunction therewith, it is further ORDERED that the movants are permitted to proceed to judgment in their

pending lawsuit against Jason, provided that all costs of defense are borne by its insurer, St. Paul, and that the Skees are prohibited from executing on any judgment obtained against Jason personally or against any of Jason's assets save its liability insurance covering their lawsuit.

**SO ORDERED.**